(16 App. Div. 126.)

HALBERT v. GIBBS.

(Supreme Court, Appellate Division, Second Department. April 26, 1897.)

1. ATTORNEY AND CLIENT—LIEN OF ATTORNEY—CONTINUATION OF RELATION.
   An attorney is not entitled to lien where he discharges himself by absolute refusal, without adequate cause, to proceed with the case.

2. SAME—ABANDONMENT OF CASE.
   The abandonment of a case by an attorney is not justified by the refusal of his client to pay a balance claimed by the attorney to be due for services, where the client claims that he had paid for such services in full.

3. SAME—SUBSTITUTION.
   Plaintiff is entitled to substitution of attorneys where the attorney originally retained has refused to proceed with the case unless the amount claimed to be due for his services should be paid, and plaintiff claims that he has paid for such services in full.

Appeal from special term, Kings county.

Action by George Halbert against Albert B. Gibbs. From an order denying a motion for the substitution of an attorney, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Archibald C. Shenstone, for appellant.
A. Prentice, for respondent.

HATCH, J. The action out of which the present controversy arose was brought to recover a balance of $6,014, claimed to be due to the plaintiff from the defendant for material furnished, and labor and services performed, upon private residence premises in the city of New York. The defendant denied liability, and set up, by way of counterclaim, improper work, failure to furnish material, loss of rent, money loaned, and other items, amounting in the aggregate to the sum of $20,510.18. The action was begun about April, 1893, and Augustus B. Prentice was retained to defend the action, and served notice of appearance therein. He had, prior to this time, performed some service in endeavoring to negotiate a settlement of the matters in dispute. The cause being at issue, the same was, upon December 28, 1893, referred to Levi A. Fuller, as a referee, to hear, try, and de-

termine. The hearing before the referee began on the 23d day of February, 1893, and has continued down to the 8th day of February, 1897. There have been 144 hearings before the referee, the longest hearing being 4 hours and the shortest 1 hour, the average being a fraction less than 2½ hours for each hearing. From time to time the defendant has paid to his attorney the sum of $1,500; to the referee from time to time, $900; to stenographers and witnesses, $1,526.53. The referee has been paid in all about $1,700, and the stenographer about $1,900; 4,970 pages of testimony have been taken, and 53 witnesses examined. On the 5th day of February, 1897, defendant's attorney wrote the defendant that in looking up his account he found that he had only received from the defendant $300 since the 25th of November, 1895, and that he had spent in actual attendance before the referee 150 hours since that date, and further stated: "I must decline to go a step further with the case until you send me a check for $500." This demand was not complied with by the defendant. The reference at this time stood adjourned until the 8th day of February, at 2 p. m. At that time the defendant appeared before the referee, ready to proceed with the hearing. The cross-examination of a witness for the defendant was unfinished, the witness was present, and plaintiff's counsel desired to proceed with the examination. The defendant's attorney refused to proceed or do any act in the matter. At the solicitation of counsel for the plaintiff, the attorney consented to proceed and conclude the examination of the witness, and at the close of the session stated that 'he would take no further part in the trial unless his bill was paid. The reference was adjourned to the 15th day of February, 1897. In the meantime the defendant retained Archibald C. Shenstone to conduct his defense, and requested him to procure an order of substitution of himself as attorney of record, and for that purpose the defendant executed and acknowledged a consent to have said Shenstone substituted as his attorney. Shenstone procured an order of substitution, and presented the same to the defendant's attorney, with the consent of defendant. Prentice refused to sign a consent for substitution, and refused to deliver the papers in the action to Shenstone. On the adjourned day the parties, Prentice and Shenstone, appeared before the referee. The latter again endeavored to have said Prentice execute the consent for substitution. The latter refused, stating that he refused to deliver any papers in the case until his bill for services was paid. Shenstone thereupon attempted to appear as counsel for the defendant, to which Prentice objected, stating that he still considered himself the attorney in the case, and requested an adjournment for such time as the referee might think proper; that he only refused to proceed on the ground that his client refused to compensate him for his labor and time. "If his fees were paid, he would be glad and willing to proceed with the case." Against the opposition of the counsel for the plaintiff, the referee adjourned the case for two weeks. Thereupon this motion was made, resulting in an order of reference to hear, try, and determine what amount, if any, is due from the defendant to his said attorney for services and disbursements in the action. On motion to resettle this order, an order was made denying the defend-

ant's motion to substitute the said Shenstone as attorney for the defendant in the action, and directing the hearing before the referee appointed by the former order to proceed, and for the referee to file his report as expeditiously as practicable.

The amount of the balance which the defendant's attorney now claims is due and owing to him for his services is the sum of $3,410. Prentice claims that when he was retained by the defendant it was upon the understanding that his fees should be paid as the case progressed; that he expressly stated that he would take the case upon no other condition. The defendant claims that he has never promised to pay the attorney any sum of money that he has not paid; that he feels quite certain that he has fully paid what his attorney's services were worth. It is not at all necessary that we settle this disputed question upon this motion. Enough appears in the affidavits, however, to show that the defendant upon this question is, if he insists, entitled to have his liability established in the usual forum where actions are tried and claims are established. One proposition stands out before us clear and distinct. It is that the attorney for the defendant refuses to proceed with the trial of this action, or to permit any one else to represent the defendant, unless he be paid, either in whole or in part, his claim for service. He therefore brings himself squarely within the doctrine laid down in Matter of H———, 93 N. Y. 381. By his refusal to proceed, in the language of the above case, "he discharged himself, and in such case it is clear that an attorney cannot leave his client in the middle of a matter, because he does not supply him with money, or by reason of any other difficulty, without running the risk of losing the benefit of that relation." The attorney insists, however, that he has a lien upon the counterclaim set up in the answer, and also upon his client's papers, which he may not be deprived of, and which he is entitled to have protected before any order will be made substituting another attorney. It is quite true that the attorney has a lien upon his client's cause of action or counterclaim, and that the same attaches to a verdict, report, decision, or judgment in his client's favor (Code Civ. Proc. § 66); and this lien extends as well to papers of the client in his hands, not only for the costs of the suit, but for any general balance on account of other professional service rendered for the client. Bank v. Todd, 52 N. Y. 489; In re Knapp, 85 N. Y. 284; Tenney v. Berger, 93 N. Y. 524. But in all of these cases the lien was upheld and continued upon the ground that the relation of attorney and client continued, and that the business in which the attorney was engaged was finished while the relation continued. In the last case cited the rule is recognized that, when an attorney accepts a retainer generally to conduct a legal proceeding, he enters into an entire contract to conduct the proceeding to a conclusion, and he cannot abandon his relation without justifiable cause. It is true that there is a somewhat anomalous condition respecting these contracts, for, while it is the duty of the attorney to proceed to a termination of the matter in which he has engaged himself, it is the right of the client to dis-

charge arbitrarily at any stage of the proceeding, with no greater liability than to compensate the attorney for services rendered up to that time; and for this reason it is said that the rule which binds the attorney to an entire performance ought not to be very rigidly enforced. But the clear distinction is always made that the attorney, in order to maintain his lien, must show performance upon his part or such a condition as clearly justifies his withdrawal. Sessions v. Palmeter, 75 Hun, 268, 26 N. Y. Supp. 1076. When he discharges himself by an absolute refusal to proceed, no lien for service attaches either to judgment, proceeds, or papers. In the language of Mr. Justice Van Brunt:

"It is clear that the defendant, in view of the attitude taken by his attorney, was entitled to a substitution, and there was nothing upon which any lien, as attorney, could attach, and that the only right which the attorney seeks to enforce is the right of the plaintiff to obtain judgment against his own client for want of a defense." Tuck v. Manning, 53 Hun, 455, 6 N. Y. Supp. 140.

It will be found, and has been, within the authorities above cited, quite practicable for the court to protect an attorney in a proper case against a dishonest client. It is equally practicable to protect a client against improper practice and unjust demands of his attorney. So much is left to the general equitable power of the court in this regard that but little real difficulty will be encountered. We have passed the sentimental age, where counsel are required or expected to devote valuable service gratuitously from any sense of honor, however nice, and have long since reached the practical side of the profession, where honorable engagements upon both sides are to be observed,—the one to render faithful service, measured by his ability; the other to make compensation fairly or as may be agreed. In the present case we think that nothing appears which justified the attorney in the abandonment of his client in the midst of the trial. We have rehearsed the facts for the purpose of showing what we regard as the unjustifiable delay in the prosecution of this action, and the enormous expense, comparatively, which has attended it. This class of actions, while complicated as to items as a house is of parts, is not, beyond that fact, difficult or extraordinary. They engage the attention of the courts at each term, and are disposed of with but little delay, when proper effort is made to that end. This suit has now been before the referee for over four years. The fees already paid amount to $6,600 more than plaintiff's original claim. The item now demanded by the defendant's attorney is $3,410, making the claims paid and those demanded, of which we now know, the sum of $10,010, and the end is not yet. For a long time the fees of referees led the procession of fees, and frequently amounted to more than the sums paid to counsel. But established order cannot always maintain itself. Stenographers looked with jealous eye upon this fatness of fees. Modestly, but with determination, pertinacity, and legislation to aid, they crept up, desire ever keeping pace with opportunity, until it has brought them at the top, with appetites whetted and keen scent for more. It is the usual thing now that stenographers' fees are greater than referees' fees. We read in

the present record: "The referee has been paid about seventeen hundred dollars. The stenographer has received about nineteen hundred dollars." And more is to come. The defendant surely can testify that the sentimental age, when honor and renown was the motive which brought men to devotion in the law, has passed away. He seems to have met only the hardest kind of hard practical facts, and is at present being ground between the upper millstone of the plaintiff's active efforts, and the lower millstone of his attorney's refusal to act or to permit any one else to do so. It is these things which bring the administration of justice into disrepute. This practice courts should lay hold of with an iron hand, setting their stern disapproval upon such methods. The system impoverishes litigants, amounts to a denial of justice, and is the cause of just complaint by the people.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion to substitute should be granted, with $10 costs. All concur.

(16 App. Div. 104.)

JOHANNS v. NATIONAL ACC. SOC. OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. April 26, 1897.)

ACCIDENT INSURANCE—UNNECESSARY AND VOLUNTARY EXPOSURE.

An attempt to board a moving street car is not, as a matter of law, "voluntary or unnecessary exposure to danger," within the meaning of an accident policy.

Appeal from trial term, Queens county.