In re RIESER.

ZIMMERMAN v. LOFT et al.

(Supreme Court, Appellate Division, First Department. March 11, 1910.)

1. ATTORNEY AND CLIENT (§ 186*)—COMPENSATION AND LIEN—FORFEITURE.

Where an attorney is retained to prosecute or defend a case, this constitutes, so far as his obligation to his client is concerned, an entire understanding to conduct it through, and he cannot withdraw from the case without just cause without forfeiting his common-law lien on the pleadings and papers therein.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 393; Dec. Dig. § 186.*]

2. ATTORNEY AND CLIENT (§ 186*)—COMPENSATION AND LIEN—FORFEITURE.

A client engaged attorneys to appear for him in two suits. There was a dispute as to the amount of the fees agreed upon for the first suit. After they had advised him as to his claim and served summons and complaint in the first action, the client settled it and wrote the attorneys that he would pay them $250 as fees, to which letter they took no exception. Later he claims he agreed verbally with one of them that their fees should be $250. After the settlement he sent them a check for $250, stating that it was for fees in full to date, which they retained and cashed. They took no part in the settlement of the suit, but later demanded further fees under the original agreement, and on the client's refusal to pay them they declined to further proceed with the second suit. Held, that they thereby discharged themselves without just cause and lost any lien they had as attorneys on the papers in the second suit, and the client was entitled to have other attorneys substituted in their place in the suit and the pleadings and papers delivered over unconditionally.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 393; Dec. Dig. § 186.*]

3. ATTORNEY AND CLIENT (§ 75*)—RETAINER—CHARGE—CHANGE AND SUBSTITUTION.

An order substituting new attorneys in a pending action must also include an order for delivery of the pleadings and papers in the case to the substituted attorneys.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 75.*]

4. ATTORNEY AND CLIENT (§ 75*)—RETAINER—DETERMINATION OF RELATION—ACT OF PARTIES.

Where attorneys refused to act further for a client in a suit because of differences as to fees in another suit, the fact that there were subsequent negotiations between the parties, and the client evidently was desirous of adjusting matters if he could on any reasonable basis, but was unable to agree with his attorneys, and did not re-employ them, and they did not represent him further or present a willingness to do so, it did not show a waiver of the client's right to accept their refusal to act and have other attorneys substituted in the action.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 75.*]

Appeal from Special Term, New York County.

In the matter of the application of Ely J. Rieser for substitution of attorneys in Louis J. Zimmerman against George W. Loft and others. From an order substituting attorneys on condition, Rieser and his attorneys, Isaac Moss and Benjamin F. Feiner, who were re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

moved by the order as attorneys in the proceeding, separately appeal, Rieser from the entire order, and the attorneys from so much thereof as reduces the amount of fees due them, and providing that their lien as attorneys was discharged. Reversed in part, and modified in part.

See, also, 125 App. Div. 725, 110 N. Y. Supp. 499.

Separate appeals by Ely J. Rieser, petitioner, and by Isaac Moss and Benjamin F. Feiner, his attorneys, from an order of the Special Term; the appeal of the former being from the entire order, and of the latter from so much thereof as modifies the report of the referee by reducing the amount due to them from the petitioner from $600 to $250, and from so much thereof as further modifies the report of the referee by providing that the lien of the attorneys was discharged by the execution and filing of an undertaking pursuant to an order of the court and by their surrender of the papers in the action. which modification was made upon the ground as stated in the order that the bond was intended to and did take the place, as security, of the lien discharged by the surrender of the papers.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Paul Armitage, for appellant and respondent Rieser.
Louis Salant, for respondents and appellants Moss and Feiner.

LAUGHLIN, J. This proceeding arose on the application of the appellant Rieser for a substitution of Messrs. Douglas and Armitage for Messrs. Moss and Feiner as his attorneys in this action brought by Zimmerman against himself and others in the Supreme Court, and for a direction that they be required to turn over the pleadings and other papers in the action. Moss and Feiner were at that time attorneys of record for Rieser in another action; but the motion was limited to the action brought against him by Zimmerman and to the pleadings and papers thereon, and it does not appear that it embraced, or that the order was intended to include, any papers other than those which were indispensable to the proper representation of his interests in the action by the substituted attorneys.

The motion came on for a hearing at the Special Term on the 24th day of July, 1907. The court granted an order of substitution and directed Messrs. Moss and Feiner to deliver the pleadings and other papers to Messrs. Douglas and Armitage within five days after the execution and filing by the client of a bond with sureties to be approved by the court in the sum of $1,500 conditioned for the payment of "any sum or sums which may be hereafter established in this proceeding to be due and owing by the said Rieser to Moss and Feiner for professional services, and for which they have a lien upon the papers herein," and the order referred it to an attorney and counselor to take proof as to what sum, if any, was due or owing by Rieser to his attorneys "for any and all professional services or disbursements, and for which they have a lien upon the papers in the above-entitled action."

No evidence was offered before the referee, and no claim was made that there was anything due or owing to the attorneys from their client for services or disbursements in the action brought by Zimmer-

man, or that by reason of anything done or agreed to be done by them in that action they had any lien upon the papers. · It was, however, shown and found that the attorneys were employed by Rieser on or about the 2d day of October, 1906, with respect to a controversy existing between him and one Stokes based on a contract between them by which Rieser was to manufacture and deliver certain fixtures and trim to Stokes to be used in the construction of the Hotel Ansonia. The attorneys and their client disagreed with respect to the terms of their employment in that matter. They agreed that the attorneys were employed to begin and prosecute an action for Rieser against Stokes for a breach of the contract; but the attorneys claim that there was an express agreement, by which they were to receive for their services the sum of $250 for services rendered in the matter before the express agreement was made, and $250 for future services to be rendered in the action, and 10 per cent. of any amount recovered by their client "by settlement, judgment, or otherwise," which, however, was not to exceed the sum of $500. The client denies that this agreement was made, and claims that the attorneys were acting under a general retainer.

The negotiations which the attorneys claim resulted in the express agreement were conducted in part by writing and in part by personal interviews and communications by telephone. On the 2d day of October, 1906, the attorneys wrote their client stating that they desired to confirm their conversation with him over the telephone that day relative to their fees in the Stokes matter, and in that letter stated that their understanding of the agreement was as they now claim. The client did not reply to that letter, or, as he testifies, "pay any attention" to it. The attorneys commenced the action by serving a summons, and Stokes appeared therein on the 7th day of November, 1906. Thereafter, and on the 28th day of December of the same year, the client by advice of the attorneys sold the fixtures and trim which he had manufactured for Stokes, but had not delivered at public auction, and they were bid in for him by his brother for the sum of $4,000. Stokes bid $3,250 on the sale. Subsequently negotiations were opened between Stokes and Rieser, as a result of which they made a formal agreement for a settlement of their differences on the 11th day of March, 1907, by which Stokes was to accept the fixtures and trim and pay the sum of $3,500, and according to the last testimony by Rieser, which changed his former testimony with respect to the time, this was consummated on the 15th day of April, 1907, and mutual releases were executed as Stokes asserted claims for damages and the right to a lien on the undelivered fixtures and trim on account of advance payments. The attorneys, after the settlement and discontinuance of the action, claimed, in addition to the two items of $250, the further sum of $350, being 10 per cent. of the amount which their client received from Stokes. A disagreement thereupon arose between them. The attorneys were aware of the fact that negotiations were pending between Rieser and Stokes for a settlement, and he had on that account withheld the verification of the complaint which they sent to him on the 8th day of February, 1907. On the

25th day of March, 1907, he wrote his attorneys, in reply to an inquiry made by them with respect to the verification of the complaint, saying:

"I am negotiating toward a settlement with Mr. Stokes; for this reason, would prefer you to wait a little longer, so that I will save the expense of attorneys, etc., and principally my time; for this reason, you need not do anything regarding this, until you are further advised."

The attorneys did not reply to this letter or in any manner inform their client in writing or verbally that their fees would be the same even though the client settled the case. They seem to have taken virtually the same position with regard to their client's claim that he took with respect to theirs, viz., that a contract could not be made or changed by the assertions of one party. The attorneys also claim that Rieser was not entirely frank with them concerning this settlement, and that it had been fully consummated before he wrote the letter. They base their claim on his testimony. His first testimony on the subject affords a basis for their contention; but later he distinctly modified it, and a check and his books were given as the reason therefor. If they were disposed to question this correction in his testimony, they could have definitely settled the point by requiring the production of the check or books or calling those who represented Stokes. Rieser testified that before settling with Stokes he telephoned his attorneys and talked with Feiner with a view to ascertaining what their charges would be to that date, and was informed that they would be $250. The attorneys had rendered their client a bill under date of December 27, 1906, which contained certain charges for services and disbursements not in question here, and a charge of $250 "to retainer in Rieser v. Stokes." He had not settled this bill at the time he claims to have had the conversation over the telephone with Feiner. On the 13th day of April, 1907, the attorneys for Stokes wrote Moss and Feiner stating that their client and Rieser had settled their differences, and requesting the execution of a stipulation for a discontinuance of the action. The attorneys then wrote their client, under date of April 15, 1907, asking for a confirmation of this notice of settlement, and requesting a check "for bill rendered," but made no further claim at that time. Rieser testified that, pursuant to the understanding which he had with Feiner in the conversation over the telephone, he inclosed a check to them with a letter under date of April 27, 1907, for $424, the amount of their bill theretofore rendered, and in the letter stated that the check "is in settlement of all matters up to May 1st." They retained and cashed the check, and on the 29th day of April, 1907, wrote acknowledging his letter and the check, and said:

"We desire to call your attention to the fact that the check is not in full settlement of all matters to May 1st, as stated by you. The bill specifically mentions the item of $250 in the Stokes case as a retainer merely. We call your attention to our definite arrangement in this case, and, in view of its final settlement, we would thank you to send us a check for the balance due us."

Feiner denied that he had a conversation over the telephone, as testified by Rieser, and says that there had been no dispute with respect to the express agreement for their services in the Stokes matter, as claimed by them. The client replied to this letter on May 1, 1907. as-

serting, in substance, that it was agreed between him and Feiner before the settlement that the attorneys' charges would only be $250, and that he considered that the check paid in full for the services. The attorneys then wrote him on May 2, 1907, reiterating their claim. Feiner testified that thereafter Rieser, in a conversation with him over the telephone, promised to adjust the matter, but failed to do so, and that another letter was written to him on May 11, 1907, asking that he call and adjust their fees the early part of the next week; that he then had another conversation with Rieser over the telephone, in which an appointment was made which Rieser did not keep; that another letter was written on May 23, 1907, demanding that the matter be disposed of that week; that he had informed Rieser that he contemplated sailing for Europe on the 6th of June of that year, and, as he had had principal charge of the Stokes matter, and had had the interviews and negotiations with Rieser, he was desirous of adjusting the matter before his departure; that on May 27, 1907, he wrote Rieser another letter, stating that in view of the latter's refusal to call and of his indifference to their communications, unless their fees, amounting to $250 plus 10 per cent. of the amount of the settlement, were adjusted by the day following, "we shall decline to act for you in the pending cases of Zimmerman v. Loft and Rosenthal v. Rieser, and shall at once start suit for the full amount due us in the Stokes matter"; that in reply they received a letter, under date of May 28, 1907, stating that Rieser would call at their office the next day, but that he did not do so, and thereupon they wrote him a letter, on May 31, 1907, as follows:

"We received your letter stating that you would call here last Wednesday, the 29th inst. You neither called nor communicated with us in any way, despite the fact that we telephoned your office several times on that day. Please take notice that we now refuse to act any further as your attorneys in either the case of Zimmerman v. Loft or Rosenthal v. Rieser. We stand ready to substitute any attorney you may name, and shall be pleased to deliver over all papers. In connection with the Zimmerman case, we again advise you that, in view of the missing exhibit, it will be useless to go further with your appeal. Mr. Arthur Rieser states positively that he placed this exhibit in your possession, and you have failed to deliver same to us. The case has been settled by Judge Newberger, and is ready to be printed but for the reasons, firstly, that the exhibit has not been furnished to us, and, secondly, that you have failed to pay our fees. We do not see our way clear to go further with it. We regret that your conduct has necessitated a lawsuit, but as you seem to have an aversion to paying your lawyer's fees, there is nothing left for us to do but start suit at once, which we shall now do without further delay."

We are of opinion that the learned Special Term should have granted an order for substitution and have directed Messrs. Moss and Feiner to deliver the pleadings and papers in the Zimmerman action to the substituted attorneys unconditionally. The controversy between them and their client with respect to their fees in the Stokes matter did not justify, their attitude in refusing to continue to represent him in the Zimmerman Case. There may have been originally an express agreement between them and their client, as they claim, with respect to their fees in the Stokes matter and action; but it does not follow that that agreement would have entitled them to the fees which they claim, for it is not at all clear that the $3,500 received by

their client from Stokes was received in the action which they had brought against Stokes or solely on account of the settlement thereof. They took no part in bringing about the settlement, and they did not render the services which it was contemplated it would be necessary for them to render when the agreement, if any, was made. Unless, therefore, they intended to insist upon an unconscionable demand against their client, his testimony to the effect that it was agreed that they only claimed $250 for services rendered down to the time he made the settlement is not improbable, and it is corroborated to some extent by his letter of March 25th, written to them, to which they took no exception, and by their letter written to him after they were aware that the Stokes matter had been settled, in which they requested a check for the bill which they had rendered for $250 retainer in that matter, and made no claim therein for further fees.

Nor is it at all clear that they were at liberty to use their client's check which had been sent in full satisfaction for their fees in the Stokes matter without such act constituting an accord and satisfaction of any further claim they might otherwise have on account of their agreement with him; but even though, technically, it did not constitute an accord and satisfaction, it was not the proper course to have taken with their client. He had plainly asserted his understanding that this check was in settlement of all matters between them to May 1, 1907. They should at least have communicated with him stating their understanding of the agreement and have afforded him an opportunity to withdraw the check. They had a remedy for any legal claim which they had against him for services. Their conduct in accepting the check, and at the same time repudiating the condition on which it was sent by their client, is not commendable. When an attorney is retained to prosecute or defend a case, that constitutes, so far as his obligation to his client is concerned, an entire undertaking to conduct it through, and he cannot withdraw from the case without just cause. Halbert v. Gibbs, 16 App. Div. 126–129, 45 N. Y. Supp. 113, and cases cited. They were at liberty, of course, at any time for just cause to terminate the relation of attorneys and client existing between them and Rieser; but, if they did that without just cause, they forfeited their common-law lien on the pleadings and papers in the Zimmerman action.

It cannot fairly be said on the evidence in this record that Rieser did not make the claim that they had been paid in full for their services in the Stokes matter in good faith. They had received $250 for these services, which would seem to be reasonable compensation for the advice which they gave and for serving a summons and preparing a complaint. They were too hasty in the circumstances, and should have proceeded with the appeal in the Zimmerman Case. By their letter of May 31st, therefore, they discharged themselves without just cause, and they lost any lien which they had as attorneys. Matter of H——, 93 N. Y. 381; Halbert v. Gibbs, 16 App. Div. 126, 45 N. Y. Supp. 113; Tuck v. Manning, 53 Hun, 455, 6 N. Y. Supp. 140; McKay v. Morris, 35 Misc. Rep. 571, 72 N. Y. Supp. 23.

Counsel for Moss and Feiner, as I understand his argument, con-

tends that, notwithstanding the fact that the attorneys refused without cause to longer represent their client in the Zimmerman action, while this might justify the order of substitution, it did not deprive them of their lien upon the papers in that action which are necessary to the proper conduct of the appeal therein. In such case, the order of substitution would be fruitless without the papers. It cannot be that an attorney may abandon the cause of his client in the middle of the trial or on appeal when the immediate presence or action of an attorney is required, and thereby merely forfeit his right to be the attorney of record and to any lien upon the cause of action or counterclaim or final judgment, but retain a lien upon the papers, which the client must discharge by paying any claim he may see fit to make for services in that or in any other actions or matter, or forthwith pay the amount which the court on a summary application may determine to be the value of his services. If such were the rule, the substitution would not accomplish the purpose for which it was intended. If the substitution occurred upon the trial of an action, it is manifest that it would be necessary for the substituted attorney to have all the papers in the action; but, under the rule contended for by counsel for Moss and Feiner, he could not obtain them unless his client then and there yielded to the demand made upon him or to any order summarily made and was able to comply therewith.

An effort is made to distinguish the cases herein cited. They are in some respects distinguishable upon the facts and in the manner in which the question arose; but, as we read them, they are authority for the proposition for which we are citing them. There are, of course, two classes of attorney's liens. One is a general common-law lien on papers, including money, which has come to be known as a "retaining" or "possessory" lien, and the other is a limited statutory lien upon the cause of action or counterclaim, which has come to be known as a "charging" lien. Goodrich v. McDonald, 112 N. Y. 157–163, 19 N. E. 649; Lorillard v. Barnard, 42 Hun, 545; In re Wilson & Greig, 2 Civ. Proc. R. 343; Matter of Hollins, as Ex'r (Court of Appeals, Jan. 25, 1910) 90 N. E. 997; Code Civ. Proc. § 66. In Matter of H——, Tuck v. Manning, and McKay v. Morris, supra, the questions arose over the assertion of the statutory or charging liens only; but the opinions do not indicate that any distinction was recognized between the two classes of liens with respect to a forfeiture of the right to a lien. If the right to a statutory lien may be declared forfeited on account of the refusal of the attorney without just cause to proceed so that he loses all right to a lien for the services rendered which are accepted by the client and substituted attorney and contribute toward the final recovery, it would seem on principle that he should lose his common-law lien on the papers in the action by unreasonably refusing to continue the service for which he was retained. Such was the case of Halbert v. Gibbs, supra, and, although it does not appear that the question as to whether the order of substitution in that action required the delivery of the papers, that would seem to be the fair inference, since otherwise a discussion of the question of the lien would not likely have been indulged in by the court, and, moreover, the

appeal was from an order denying a motion for substitution and for delivery of the papers, and the entire order which referred the question as to value of services was reversed and motion for substitution granted, which, I think, granted the motion as made.

It is further contended in behalf of Moss and Feiner that, even though their client were at liberty to accept their letter of May 31, 1907, as a discharge of themselves as attorneys, still he did not do so, and he waived his right in that regard by further negotiations with them, and that before he finally employed other attorneys they withdrew from the position which they took in that letter and refused to consent to a substitution. On the reference Rieser was not interrogated with respect to any further conversations or correspondence between him and Moss and Feiner; but it appears from his moving affidavit that, acting upon their letter of May 31, 1907, he called upon Messrs. Douglas and Armitage and employed them to protect his interests and to be substituted in both litigations referred to in the correspondence, and that on the 22d day of June, 1907, he wrote Moss and Feiner, requesting them to furnish him with a consent to substitution of attorneys, and that in reply to that letter he received a letter from them under date of June 29, 1907, in which they say:

"After careful consideration of the pending matters, we fail to see why we should give a substitution in Zimmerman v. Loft and Rosenthal v. Rieser, until you make a fair disposition of the matters in dispute between us."

And then asserted that they had a plain understanding with him, that there was no justification for the position which he took with respect to their fees, and drew attention to the importance of pressing the appeals in the Zimmerman and Rosenthal Cases without delay, and said that, if he could locate an exhibit in the Zimmerman Case which his representative mislaid:

"The appeal in that matter has every prospect of success, and if our relations were otherwise than strained, we would be only too pleased to put forth the necessary efforts to procure the reversal which we think you are entitled to in this case. The importance of the missing exhibit, however, cannot be overestimated and every endeavor should be made to locate the same. We should be pleased to afford whomever you choose to substitute in our place every opportunity to conduct those appeals to a successful conclusion, and the papers and substitutions are ready to be turned over, but we feel that it is up to you to treat us fairly in the Rieser v. Stokes matter before we should reciprocate in other matters. To bring the matter to a head, we will accept in full settlement the sum of $350 in Rieser v. Stokes, plus our actual disbursements of $43.20 in Rosenthal v. Rieser. If you will send us a check for this amount, you can be assured of our best endeavors to facilitate you in other matters."

Rieser does not state the date on which he first consulted Armitage, but I think it is fairly to be inferred that he did so before writing the letter of June 22d, but Armitage's affidavit indicates that it was later.

Much of the correspondence between Rieser and his attorneys was conducted in his firm's name, and it appears that under date of June 8, 1907, his firm wrote a letter to his attorneys as follows:

"Our Mr. Rieser will see you some day next week, regarding you to continue with the appeal for the various cases, and the matter of the fees. "

With respect to that letter, Moss testified that he received it after Feiner left for Europe; that a week or two weeks thereafter Rieser called at the office and "took exception to the bill that had been sent him in the Stokes matter"; that the bill was discussed at length, "and finally Mr. Rieser said something about having spent money for charity, and he would give me $100 to call the matter off, and I said I wanted no charity. I wanted no friction, so I said I would take $350 in settlement of the bill. He declined to do this and left the office."

The status of the Zimmerman Case on May 27, 1907, was that the proposed case and amendments were pending settlement before the trial justice, having been submitted to him on the 21st day of May, 1907, and in that action judgment had been rendered against Rieser for about $1,700, and notice of appeal had been served and an undertaking had been filed to stay execution. It appears by the affidavit of Mr. Armitage, used in favor of the motion, that he was employed, by Rieser in the month of June, 1907, to represent him in the Zimmerman Case and to procure an order of substitution. He does not state the date of his employment. He does, however, say that at the time Rieser placed in his hands the letters from Moss and Feiner to their client of May 27, 1907, May 31, 1907, and June 29, 1907, from which it is argued that he must have been employed after June 29, 1907. His affidavit further states that he at once communicated with Moss and Feiner and requested them to forward a consent to substitution, which they refused to do on July 1, 1907, and that they also refused to turn over the papers in the action to him. He further states in his affidavit, which is verified on the 17th day of July, 1907, that the attorneys for Zimmerman claimed that the time to print the case on appeal had "long since expired," and that they had given notice that they would move to dismiss the appeal.

We are of opinion that these facts do not show a waiver of the client's right to act upon the letter of May 31, 1907. At most, there were subsequent negotiations, and the client evidently was desirous of adjusting matters if he could on any reasonable basis; but he was unable to agree with his attorneys. He did not re-employ them after they had discharged themselves, nor did they further represent him in the action or even represent a willingness to do so. Moreover, we think that the right of the client to an unconditional substitution does not depend upon the fact that the attorneys volunteered to consent thereto and to surrender the papers, but upon the fact that they unreasonably refused to further represent him. It was intended that the bond should be substituted for the papers in the action, and that, if the attorneys had a right to any lien, they should have the benefit of the bond; but, as we view the evidence, the attorneys forfeited their lien; and, therefore, they must be left to their remedy at law.

We must again draw attention to the importance of deciding whether or not an attorney has a lien and the amount thereof, without a reference. It would have been unjust and a hardship on the client to bear the large expense of this reference, had the attorneys established a lien, and it will be a hardship on the attorneys to bear the expense on their failure to establish a lien. The expenses, however, have been

incurred, and they must be borne by the attorneys who asserted a lien which they had forfeited. Some embarrassment arises from the fact that there was no appeal in advance from the order of substitution and reference, and it is stated in the points for the attorneys that an appeal was taken therefrom by Rieser after he took this appeal, and that it was dismissed. It is not contended that the order of reference adjudges that the attorneys have a lien upon the papers, and that it was only intended to refer the question with respect to the amount thereof, but it is claimed that, if they have no lien, that should have been decided without a reference, and that Rieser, by proceeding with the reference and not appealing from the order, should not now be heard to contend that they have no lien. Evidence was given on the reference bearing upon the question of the right to a lien and having no bearing upon the value of the services, and the referee understood that he was to take evidence and report on the question as to whether there was a lien, as well as on the question as to the amount, and he did report on both points. We are of opinion, therefore, that the order should be construed as leaving the question as to whether there was or was not a lien open until the coming in of the report of the referee, although its phraseology is not perfectly clear.

It follows, therefore, that the order should be reversed in so far as it adjudges that the attorneys had a lien, in so far as it adjudges the amount owing by the appellant Rieser to them, or in so far as it awards the payment thereof, and in so far as it adjudicates the liability for costs, with $10 costs and disbursements to the appellant Rieser; and the report of the referee should be modified so as to adjudge that the attorneys forfeited their lien, and, as thus modified, confirmed, with $10 costs and disbursements to appellant Rieser if they have been paid by him, and, otherwise, by directing Moss and Feiner to pay the same. All concur.