HARDING v. CONLON et al.

(Supreme Court, Appellate Division, First Department. November 10, 1911.)

1. APPEAL AND ERROR (§ 110*)—ORDERS APPEALABLE—ORDER DENYING RE-ARGUMENT.

    An order denying a motion for reargument is not appealable.

    [Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 110.*]

2. ATTORNEY AND CLIENT (§ 177*)—ATTORNEY'S LIEN—ATTORNEY NOT OF REC-ORD.

    An attorney who, though not the attorney of record, virtually had charge of the case with the client's knowledge and consent, and rendered services both as an attorney and as counsel, has a lien upon the client's papers coming into his hands for use in the litigation until he is reimbursed or secured for expenditures made in conducting the suit, though he does not have a statutory or charging lien, as given by Code Civ. Proc. § 66.

    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 386; Dec. Dig. § 177.*]

    Ingraham, P. J., and Scott, J., dissenting.

---

Appeal from Special Term, New York County.

Action by Winifred F. Harding against Eva K. Conlon and others. From an order requiring one of defendants to deliver to another the documents relating to the action, and from an order denying a motion for reargument, such defendant appeals. Appeal from last order dismissed, and matter remitted for decision as stated.

See, also, 131 N. Y. Supp. 1119.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Frederic J. Swift, in pro. per.
Jay Noble Emley, for respondent.

LAUGHLIN, J. [1] The order denying the motion for reargument is not appealable, and the appeal therefrom is therefore dismissed, but without costs. The purpose of this action was to procure the cancellation of a deed, and the record thereof, to the premises known as 121 Worth street, in the city of New York, executed by the husband of the defendant Conlon to her, on the ground that it was a forgery. She appeared in the action by Marsh & Bennett, but the date of their appearance for her is not given. It appears, however, that the action was pending in the month of April, 1910, for an agreement in writing, recited to have been made on the blank day of April of that year, was executed by the defendant Conlon and by Marsh, one of the firm of her attorneys, who, it was recited had been retained as her attorney to defend the action, "and to conduct such other proceedings in connection therewith as he may deem necessary or advisable to protect her, and to secure to her her rights and title in and to" the premises, and delivered to the appellant, whereby the appellant was retained "to co-operate" with said Marsh "to a final termination" in the defense of this action, and in the prosecution of an action then pending, which had been brought by the defendant Conlon against the plaintiff, for ejectment with respect to the same premises, and to recover rent therefor, and in making a motion in another action entitled Jones v. Kelly, which it was deemed might have some effect on the defendant Conlon's rights in the premises. The agreement recited that the defendant Conlon had therefore agreed to pay said Marsh the sum of $4,000 and the costs of the action, in the event that the deed to her of the premises should be finally sustained, and 25 per cent. of any back rents recovered in the ejectment action, together with the costs thereof. The agreement also recites that Marsh agrees to assign and does thereby assign to the appellant, of the $4,000 which he was to receive under the agreement, the sum of $3,000, and, of the 25 per cent. of the rents collected, 20 per cent. thereof, and one-half of said costs. The defendant Conlon therein agreed to make payments of the said $4,000 and 25 per cent. of the rents collected or received in settlement of said litigations and the costs to the appellant and said Marsh in said proportions, and "to pay all necessary expenses of said actions and proceedings."

The appellant did not sign this agreement, but, according to his affidavit, it was negotiated at the instance of the defendant Conlon, who

applied to and retained him personally, and that, as he did not desire to oust said Marsh as attorney of record, the agreement was made, and he has acted under it ever since in the conduct of the litigations to which it refers, apparently performing duties of both attorney and counsel; and this would seem to be borne out by the records on the various appeals to this court therein. It is not controverted that the appellant appeared for the defendant Conlon and with her knowledge and consent in said litigations; but it is contended that he refused to accept said agreement, and that his appearance was merely in the capacity of counsel under a retainer from said Marsh. It is conceded that the appellant, in the course of his employment in connection with said litigations, incurred various disbursements, and he has been paid on account thereof by the defendant Conlon the sum of about $2,200, and that in the course of said employment there came into his custody and possession certain papers, in addition to the pleadings in this action, relating to this action, consisting of exhibits and other papers and documents which, by the order from which the appeal has been taken, he has been directed to turn over to her present attorney of record, and, a stay of proceedings thereunder having been denied, we were informed on the argument that the order has been complied with.

On the 9th day of June, 1911, an order was entered, on consent of the defendant Conlon and said Marsh & Bennett, substituting Jay Noble Emley as attorney of record for the defendant Conlon. The moving papers show that at the time of this substitution Marsh agreed to deliver all the papers in the action to said Emley, but that this was not done, and that said papers were in the possession of the appellant, who refused to deliver them. An affidavit of the defendant Conlon, constituting one of the moving papers, states that she has paid the appellant "in full for all disbursements which he has made in this action with her knowledge," and that he had refused to prosecute an appeal from the judgment rendered against her in this action unless he was secured or paid the sum of "about $5,000," and that he stated that he did not wish to represent her on said appeal.

The appellant, in his affidavit read in opposition to the action, denies that he refused to represent her on the appeal, or that he demanded security for his services, and denies that she has paid him in full for his disbursements incurred by her authority; and it is further stated therein that only $500 of the $2,200 paid has been on account of this litigation, and that this payment was on account of a charge of $900 for services of a handwriting expert employed by him with her knowledge, whose services were used for her benefit in the action, and $81.82 for disbursements necessarily incurred by said expert. The appellant, in a letter annexed to his affidavit, shows that he claims to be obligated to said expert for the balance of said bill, but such liability on his part is not satisfactorily shown. Another item of disbursements alleged to have been incurred by the appellant in this action is $500 paid to one Palmer as counsel for assisting in the trial of the action, of whose employment the defendant Conlon was notified in advance. It may be inferred that she made no objection to such employment; but whether the circumstances were such

that she was justified in accepting Palmer's services as part of the services which were to be rendered by appellant, or as additional services for which she was to pay, has not been clearly shown. The appellant also claims a further balance due and owing to him from the defendant Conlon, on account of disbursements in this action, and in other litigations incurred by her authority, in the sum of about $275.

The court granted the motion, and filed a memorandum opinion, showing that it was granted upon the ground that the appellant was merely employed as counsel and had no lien upon the papers, and without passing upon the question as to whether the disbursements for which a lien is claimed, or any part of them, were necessarily incurred, or incurred by her authority.

[2] We are of opinion that the court erred in deciding that the appellant had no lien on the papers in his possession. Although the appellant was not the attorney of record, he virtually had charge of the case with the knowledge and consent of the defendant Conlon, in effect as such. Not being attorney of record, however, he had no statutory or charging lien by virtue of the provisions of section 66 of the Code of Civil Procedure; but he does not claim a charging or statutory lien, nor does he even make any claim for services. He merely insists that he is entitled to be reimbursed for the disbursements necessarily incurred, or incurred by authority of the defendant Conlon, before he can be deprived of the custody and possession of the papers, including the exhibits in the action. If there were no action pending, it is perfectly well settled that he would have a lien, regardless of the statute, upon any papers which lawfully came into his possession by her authority for any services rendered to his client, of which he could not be deprived without payment or security for payment for his services. Matter of H——, 87 N. Y. 521; Bowling Green Savings Bank v. Todd, 52 N. Y. 489; Ward v. Craig, 87 N. Y. 550–560. It has not been adjudged here that the appellant has been guilty of any breach of his obligation to the client by which he has forfeited his lien.

The learned counsel for the respondent attempts to sustain the order upon the theory that the appellant was not employed as an attorney, but only as counsel in the action, and that as such he has no lien. If, as contended by the appellant, the entire charge and control of the case was turned over to him without a formal substitution, he has good ground for contending that he was in fact employed as attorney, although he did not become attorney of record; but we do not deem it necessary to place our decision on this ground, for we think that the line of demarcation with respect to services rendered as counsel and as attorney although it is recognized for certain purposes (Easton v. Smith, 1 E. D. Smith, 318), is not such in this jurisdiction as to deprive a member of the bar who renders services *both as attorney and counsel in an action* at the instance or with the knowledge and consent of the client, which appears to be the case here, in which he is not the attorney of record, of a lien upon papers of the client lawfully coming into his hands for use in the conduct of the litigation. As already indicated, the court at Special Term did not pass upon the liability of the defendant Conlon for the disbursements claimed by the

appellant, or determine that he had been guilty of any breach of his obligation to his client by which he forfeited his right to a lien (Matter of Rieser, 137 App. Div. 177, 121 N. Y. Supp. 1070), but decided the motion upon the theory that, not being the attorney of record, he had no lien.

We are therefore of opinion that the matter should be remitted to the Special Term, to be decided on the merits on such further proof by affidavit as either party may present, or by reference, as the court may deem necessary, and that at the same time an application for restitution may be made, and, if it shall be determined that the appellant has incurred any disbursements for which the defendant Conlon is liable, that the papers be ordered returned to him, and that he be adjudged to be entitled to retain the possession thereof until the amount for which the defendant Conlon is liable, as determined by the court, shall be paid, or until security therefor shall be given, with $10 costs and disbursements of the appeal to appellant.

CLARKE and MILLER, JJ., concur.

SCOTT, J. I dissent. The relations between the appellant and Mrs. Conlon are defined by the agreement, signed by herself and her attorney, Marsh, and dated April, 1910. It is true that the appellant did not sign the paper, but he expressly alleges in one of his affidavits that he did "in April, 1910, make a contract with said Eva K. Conlon and James H. Marsh, a copy of which is hereto annexed and marked 'Exhibit A.'" This is the contract above referred to. That contract recites the retainer by Mrs. Conlon of James H. Marsh as her attorney in certain litigations, and her agreement to pay him the sum of $4,000 and costs contingently upon a successful issue of one of said litigations, and 25 per cent. of the back rents to be recovered in an action in ejectment then just begun. This compensation was also necessarily contingent upon success. It was then recited that said Marsh and said Conlon desired the "co-operation" of relator in conducting and carrying on said litigation to a final termination thereof. Just what was meant by "co-operation" is not made clear. He evidently was not to co-operate as attorney of record, for Marsh continued in that capacity. Since no other form of "co-operation" is suggested, it seems clear that the expectation was that he should act as counsel, and that this was the understanding is borne out by the fact that he apparently did act as counsel in certain appeals in this court and the Court of Appeals. If this was his relation to the case, and it was conceded that he never was attorney of record, I am of the opinion that he never acquired a retaining lien upon papers which came into his hands in order to enable him to act as counsel. He does not claim a statutory lien under the provisions of the Code of Civil Procedure, but does claim a common-law lien irrespective of the statute.

I do not understand that counsel, as such, has ever been held to be entitled to such a lien. There are many cases which protect an attorney's lien, but that is not what we have to deal with here. While the distinction between attorneys or solicitors and counsel or barristers is not now recognized in this state as constituting different grades in

the profession, the distinction still exists with regard to the services to be rendered and the relation held towards a client, when as in Mrs. Conlon's cases both an attorney and a counsel are retained. One distinction which certainly existed at common law, and which I believe exists to-day, is that an attorney, as such, has a retaining lien upon documents belonging to the client which came into his hands, while a counsel, as such, has no lien. It would serve no good purpose to comment upon the cases dealing with attorneys' liens, for none of these deal with the question of the lien of one who is employed only as counsel. I do not overlook the fact that by the agreement above mentioned Mrs. Conlon agreed to pay the necessary expenses of the actions. This does not, I think alter the aspect of the case; for her agreement to pay the necessary expenses would be no more than the law would impose upon her in any event. But in the absence of some express agreement that the counsel shall advance the expenses, and there is no such agreement here, the advance of expenses is no part of the obligation of a counsel, as such.

Finally, the bulk of relator's claim is made up of a counsel fee paid to yet another counsel, and a large sum paid or to be paid to a handwriting expert. These are not the ordinary, but rather extraordinary, disbursements in a lawsuit. When Mrs. Conlon agreed to pay the "necessary expenses" of the action, she must, I think, be taken as agreeing merely to pay the ordinary expenses usually attendant upon actions at law, and not extraordinary expenses, such as those now under consideration, especially where both attorney and counsel have agreed for compensation contingent upon success. If it was intended to hold the client for such "expenses," her acquiescence should have been obtained before they were incurred. The relator seems to have fully understood this, because as late as January 11, 1911, we find him pressing for the payment of a large sum theretofore advanced, and saying that unless arrangements were made for his reimbursement he would refuse to go further with the case. He proceeds:

"And as the case is now virtually about being reached for trial, it means that, if I continue with the trial, I have to pay out of my own pocket before the trial begins the sum of $500 to Mr. Palmer, and guarantee the fees of the expert, whatever they may amount to, and I shall not do any such thing. I prefer to quit now."

It is not contended that Mrs. Conlon authorized the expenditures or agreed specifically to pay them. Indeed, it is clear that she did not. That, notwithstanding this fact, the relator went on and made the expenditures, is perhaps to be accounted for by his desire to realize upon his contingent agreement for compensation. At all events, I do not think that it established a claim which can be the basis of a lien in favor of one who was merely counsel in the case, and not the attorney. As to relator's disbursements for printing, which were doubtless necessary expenses, the substituted attorney offered to pay them, and the offer was refused. They should not, therefore, be made the foundation of a lien.

In my opinion, the order appealed from was right, and should be affirmed.

INGRAHAM, P. J., concurs.