GEORGE KIMMIE, Respondent, v. THE TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Defendant, CHARLES P. NOELL, Claimant-Appellant.—126 S. W. (2d) 1197.

Division One, April 1, 1939.

*Lee, Fricke & Lee* for appellant.

*Wayne Ely, Wm. O'Herin* and *Leahy, Walther, Hecker & Ely* for respondent.

GANTT, J.—Action for attorney fee. On October 9, 1929, George Kimmie was injured while in the service of the Terminal Railroad Association. On December 19, 1929, he employed attorney Charles P. Noell to prosecute his claim for damages against the railroad company. The written contract of employment fixed said attorney's fee at forty per cent of the amount collected by suit or otherwise. In other words, it was a contingent fee contract.

On January 14, 1930, Mr. Noell filed suit against the company, alleging that Kimmie was injured as a result of the negligence of the company. On a trial of the case Kimmie had judgment for $20,000,

which was reversed and the cause remanded by this court. [Kimmie v. Railroad Assn., 334 Mo. 596, 66 S. W. (2d) 561.] On a second trial Kimmie had judgment for $60,000, which was reduced by *remittitur* in the trial court to $35,000. On November 12, 1935, the judgment for $35,000 also was reversed and the cause remanded for another trial. [Kimmie v. Railroad Assn., 337 Mo. 1245, 88 S. W. (2d) 884.]

On February 7, 1935, the Grievance Committee of the Bar Association of St. Louis filed, in the St. Louis Court of Appeals, a petition for the disbarment of Mr. Noell. On June 5, 1935, the court appointed a special commissioner to hear the evidence and report finding of facts and conclusions of law. The commissioner made report as directed. The Court of Appeals adopted as its opinion said report and entered judgment suspending Mr. Noell from the practice of law for two years from June 30, 1936. [In re Noell, 96 S. W. (2d) 213.]

Although under suspension Mr. Noell was in conference with Kimmie and the attorney for the company in July, 1936, with reference to a settlement of the case. The negotiations continued for a number of days. Even so, the effort to settle was unsuccessful. In this situation and on September 10, 1936, Kimmie called the attention of Mr. Noell to the judgment of the Court of Appeals suspending him from the practice of law, and also called his attention to the fact that he could not, during the suspension, represent him as attorney. He then engaged the services of another attorney. Thereafter negotiations for a settlement were renewed. Finally, and with the consent of Kimmie, the case was settled for $15,000.

On January 25, 1937, and with the consent of Kimmie and the company, judgment was entered in the circuit court as follows:

"Judgment by consent between plaintiff and defendant in sum of $15,000, said sum to be paid to the Clerk of the Circuit Court, City of St. Louis. Satisfaction of judgment acknowledged in open court by plaintiff. As Charles P. Noell has heretofore acted as attorney for plaintiff, said sum of $15,000 is to be paid to the Clerk of the Circuit Court of the City of St. Louis, so that it may be determined by the Court what lien, if any, the said Charles P. Noell has in and against said fund for alleged attorney's fees. It is hereby ordered that notice be given to the said Charles P. Noell by the Sheriff of the City of St. Louis and the Sheriff of St. Louis County, Mo., and that the said Charles P. Noell be directed to come into court within ten days from the service of said notice upon him or upon any member of his said family at his home upon whom lawful service can be obtained, and assert and have the Court determine what lien he has, if any, in or to the distribution of said fund on account of an alleged attorney's lien."

Under this judgment Mr. Noell pleaded in two counts for an attorney fee. The first count was on the contract for forty per cent

of the amount collected by suit or otherwise. The second count was on *quantum meruit*. In the motion for a new trial Mr. Noell presented certain constitutional questions. The said questions are not mentioned in Mr. Noell's brief and must be considered abandoned. However, on the trial there was evidence under the second count tending to show that the value of his services as attorney was in excess of $7500. For this reason we have appellate jurisdiction.

In this connection it should be stated that certain physicians petitioned in the cause for allowance of claims for services rendered in connection with the trials of the case. The petitions were denied. The physicians filed motions for a new trial, which were overruled. The ruling of the court on the question is not for review, for they did not appeal.

It also should be stated that during the trial Mr. Noell asked leave to amend both counts of the claim to include money advanced by him to and on behalf of Kimmie. The court refused to permit the amendment.

At the close of all the evidence and in due course, the court found in favor of Kimmie and denied the claim of Mr. Noell for an attorney's fee under both counts. Claimant Noell appealed.

I. Claimant presents four assignments of error. Assignments Nos. 1, 2 and 4 are directed at the refusal of the court to permit claimant to amend both counts of his claim to include advancements of money to Kimmie pending the litigation, and to include the payment of expenses by claimant incident to the litigation.

We think the court correctly ruled the question. The rights of claimant, if any, must be determined under Section 11716, Revised Statutes 1929, which follows:

"The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment."

Clearly this section limits the lien to fees of an attorney for services as such.

Furthermore, the consent judgment above set forth limits claimant's rights, if any, to a lien for services as attorney. Claimant cites McGowan v. Parish, 237 U. S. 285; Lindsay v. Hotchkiss, 195 Mo. App. 563, 193 S. W. 902, and Wylie v. Coxe, 15 How. (56 U. S.) 415, 14 L. Ed. 753. Those cases are not in point. They are distinguishable on the facts. Furthermore, the question of the court's ruling on claimant's right to amend his claim in the manner above

set forth is not for review for the reason claimant did not renew his exception to said ruling in the motion for a new trial.

■ II. Claimant next contends that he should be allowed the reasonable value of the services rendered by him in the case before he was suspended from the practice of law.

He admits that if ''he willfully abandoned his contract or wrongfully refused to perform the same, obviously he would' not be entitled to a fee upon the contract or in *quantum meruit*.'' We have so ruled in Kreitz v. Egelhoff, 231 Mo. 694, 132 S. W. 1124; Helm v. Wilson, 4 Mo. 41.

It also has been ruled that an attorney forfeits all rights to payment for services by abandoning his client without just cause before the termination of the services for which he was restrained. [Taylor v. Perkins, 183 Mo. App. 204, 170 S. W. 409.]

The Courts of Appeals further ruled as follows:

''The law in this State is as claimed by counsel for defendant, that if a single engagement of service is had for a specified time, or to do a specified thing, then there can be no recovery if the plaintiff quits the service without cause and of his own fault, before the expiration of the time. If he agrees to complete a certain service and quits without cause and without the fault of his employer, he cannot recover.'' [Dempsey v. Dorrance, 151 Mo. App. 429, 132 S. W. 33.]

''It is the rule, if the attorney's compensation is stipulated, and he, without just cause, abandons his client before the proceeding for which he was retained has been conducted to its termination, he forfeits his right to payment for services rendered.'' [Young v. Lanznar, 133 Mo. App. l. c. 138, 112 S. W. 17.]

''Where one contracts for an indefinite time until a particular service is accomplished, he cannot recover where he willfully and without cause abandons the work before the expiration of the time for the performance of the service; and this rule is especially applicable to the engagement of attorneys with their clients.'' [Blanton v. King, 73 Mo. App. 148.]

Thus it appears that this review is reduced to the question of whether or not claimant, in view of his suspension from the practice of law, is entitled to a lien for legal services on the $15,000 in the registry of the court. The question was considered in the case of In re Woodworth, 85 Fed. (2d) 50 (C. C. A. 2d. Cir.), the facts of which are correctly stated by respondent as follows:

''An attorney had gone into bankruptcy. He had previously been retained to bring suits for tax refunds and had agreed to do so on a contingent fee basis of one-third of any recovery. He commenced a suit in the New York State Supreme Court, and after the case had been placed on the calendar and before it was reached for trial the attorney had been disbarred in July, 1935. A petition in bankruptcy was filed against him May 18, 1935, and a trustee was ap-

pointed July 8, 1935. The plaintiff in the suit brought by the attorney then applied in the State court for an order for the substitution of new attorneys in place of the disbarred bankrupt, and for an order requiring his trustee in bankruptcy to turn over to the new attorneys all pleadings relative to the suit. The trustee in bankruptcy then secured a stay by a petition filed with the Referee in Bankruptcy, asking that an attorney's lien be established against the papers to secure compensation for the services the bankrupt had rendered, contending that the lien was an asset of the bankrupt's estate. He asked that before the papers were released the amount of compensation due the bankrupt attorney for professional services be determined by the Court on a *quantum meruit* basis and that it be paid to the trustee. The Referee granted this, but the court below reversed the Referee's order and dismissed the trustee's petition. This action of the trial court was affirmed on appeal.''

In the court's opinion (l. c. 50) it was ruled as follows: ''Appellant concedes that the attorney, not having performed, may not recover on the contract. Nevertheless, he claims that the reasonable value of the services on a *quantum meruit* basis must be fixed and paid before the papers in the suit are released from the lien supposedly given by Section 475 of the Judiciary Law of the State of New York (L. 1909, c. 35, Consol. Laws N. Y., c. 30).

''The attorney's lien on the papers in a suit is given, not by statute, but by the common law. Assuming, despite Villar & Co. v. Conde, 30 Fed. (2d) 588 (C. C. A. 1), that the trustee succeeded to the bankrupt's rights under this contract, certainly he has no greater rights than the attorney himself would have. In the present circumstances the attorney would have no lien whatsoever. If he had unjustifiably abandoned the case, he would thereby have forfeited his lien. [In re H ............, Attorney, 93 N. Y. 381; In re Rieser, 137 App. Div. 177, 121 N. Y. Supp. 1070; Halbert v. Gibbs, 16 App. Div. 126, 45 N. Y. Supp. 113; Fargo v. Paul, 35 Misc. 568, 72 N. Y. Supp. 21; Eisenberg v. Brand, 144 Misc. 878, 259 N. Y. Supp. 58.] In the case last cited the court said: 'The attorney has a right to quit, too (although honor bound to stay), but he is severely penalized. When he withdraws, he breaks the charm that sustained his lien. He himself has destroyed the relationship necessary to support that equitable right that insured payment of his fee.'

''If voluntary withdrawal without justification destroys the attorney's lien, then withdrawal by reason of disbarment would have the same effect.

''The attorney's incapacity follows from his own wrongful act.''

The question also was considered in Egan v. Waggoner, 41 S. D. 239, 170 N. W. 142, the facts of which also are correctly stated by respondent as follows: ''It was held that where an attorney, for one-half of a contingent fee agreed upon, undertook to assist other

attorneys in the prosecution of a claim to final judgment, and such attorney was disbarred shortly after the successful trial in the court below and shortly after the filing of a brief in the appellate court and before argument, he was not entitled to the full sum agreed upon under his contract, for his own wrong had made it impossible for him to fully execute that contract."

The opinion in said case ruled as follows: "Any disability which renders a contract for legal services impossible of performance annuls the contract. [6 C. J. 676; Corson v. Lewis, 77 Neb. 446, 109 N. W. 735.]

"It follows that immediately upon the entry of the decree of disbarment, every contract of employment as attorney, entered into by respondent, was annulled. Such annulment was brought about by his own wrongdoing, and was therefore as much of a voluntary annulment of his contracts of employment as attorney as though he had expressly refused to perform such contracts, or had accepted an office which disqualified him to perform his contracts. Having annulled his contract, he certainly was not entitled to any compensation for services rendered by appellants thereafter in the performance of those duties which he had contracted to assist in performing."

On failure to recover on the contract, the attorney then sought to recover on a basis of *quantum meruit*, and Egan, in the meantime having been adjudicated a bankrupt, one Davenport, as trustee in bankruptcy, was substituted as plaintiff. This second case is reported as Davenport v. Waggoner et al., 49 S. D. 592, 207 N. W. 972, 45 A. L. R. 1126.

On this second appeal the Supreme Court of South Dakota held that the attorney could not recover any compensation for services which had been rendered prior to his disbarment. It was ruled as follows:

"By the decision on the former appeal (Egan v. Waggoner, supra) the following propositions at least have been established between the parties, and have become the law of the case upon this appeal: First, that the contract between Egan and appellants was terminated by the disbarment of Egan; second, that upon such disbarment Egan was left in the same position with regard to this contract as though he had voluntarily, wrongfully, so far as appellants are concerned, and without any just cause, abandoned the same; third, that at the time of said disbarment he had not substantially performed said contract upon his part, and was not entitled to invoke the rule of substantial performance and thereby recover upon the contract.

"Accepting the law of the case as established on the former appeal, and bearing in mind the essential nature of a contingent fee contract, the question is whether or not an attorney, who has partly, but not substantially, performed a contract for the rendition of personal services, for a compensation payable only in the event of final and

successful termination, who has willfully and intentionally abandoned said contract without cause before completion, can recover for services rendered prior to such abandonment, and, if so, upon what basis?

"The trial court, by its instructions to the jury, allowed recovery on the contract for the part performance and endeavored to apportion consideration in the contract to the part performed. This was manifestly improper. The contract was one entire contract, and was not subject to being thus divided. So far as Egan was concerned, he was employed, not by the client of appellants, but by the appellants themselves; their client thereto consenting. His employment was to assist them by the rendition of personal services until the final termination of the C. case, upon a contingent fee, and such contract was entire and not severable or divisible, and, having abandoned said contract before the C. case was terminated, without just cause, as settled by the former appeal, we believe the sounder rule to be that by such abandonment he forfeited all right to payment for any services previously rendered. [See Fry v. Miles, 59 Alt. 246, 71 N. J. Law, 293; Troy v. Hall, 47 So. 1035, 157 Ala. 592; Cahill v. Baird, 70 Pac. 1061, 7 Cal. Unrep. 61; Holmes v. Evans, 29 N. E. 233, 129 N. Y. 140; Matheny v. Farley, 66 S. E. 1060, 66 W. Va. 680; Dempsey v. Dorrance, 132 S. W. 33, 151 Mo. App. 429; Crye v. O'Neal (Tex. Civ. App.), 135 S. W. 253.]"

The opinion in the Davenport case has been approved in In re Woodworth, 15 Fed. Supp. 291, and in 45 A. L. R. 1156. We also think that the Davenport case was well ruled.

In the instant case the claimant, as a result of misconduct, could not continue as the attorney for Kimmie. The misconduct for which he was suspended, was voluntary conduct on his part. In other words, his suspension was equivalent to a voluntary abandonment of his contract of employment, and for that reason he cannot recover for services, and he has no lien on the $15,000 fund in the registry of the court.

The judgment should be affirmed. It is so ordered. All concur.