DUKE, LENNON & COMPANY, Plaintiffs, v. DUKE & WOODS, Respondents; THE BOSTON-KANSAS CITY CATTLE LOAN COMPANY, Appellant; and another case.

Kansas City Court of Appeals, March 3, 1902.

1. **Interpleader: BILL OF: TWO TRIALS: PLEADINGS: DE-CREES.** On a bill of interpleader there arises two litigations, one between plaintiff and all the defendants as to whether they shall interplead, the other between the defendants in case the order goes for the plaintiff. Each litigation requires separate distinct pleadings. A decree for interpleader puts the plaintiff out of the case and a decree determining the rights of the various defendants ends the whole litigation.

2. ———: ———: **ANSWER OF DEFENDANTS: PLEADINGS.** Where the pleadings of the defendants fail to put in issue the substantive allegations of the petition, plaintiff is entitled to a decree and the defendants should file bills setting up their respective claims to the subject of litigation and the issues should be made up in regular form; and where one defendant sets up its claim without more and the other defendant sets up his claim and adds thereto a denial of the allegations in his co-defendant's petition, his averments which are undenied must be taken as admitted.

3. ———: ———: **EQUITY: APPELLATE PRACTICE.** A bill of interpleader being of purely equitable cognizance the appellate court must try it *de novo*.

4. **Chattel Mortgages: RECORD OF: MORTGAGOR'S RESIDENCE: AGISTER'S LIEN.** A purchaser at the foreclosure on an agister's lien comes within the protection of section 3404, Revised Statutes

1899, and a chattel mortgage on stock recorded in a county other than the one in which the mortgagor resides can not defeat his title.

5. **Replevin: CHATTEL MORTGAGE: AGISTER'S LIEN.** In an action of replevin, defendant appeared to be entitled to a lien on the cattle for his feed bill. Plaintiff nor any one for him tendered the amount before beginning his action. Plaintiff's mortgage being void by reason of its being recorded in the wrong county, the question of the regularity in foreclosing defendant's lien is immaterial.

Appeal from Bates Circuit Court.—*Hon. W. W. Graves, Judge.*

AFFIRMED.

*Silvers & Silvers* for appellants.

(1) This controversy over the proceeds of the sale of the thirty-three cattle sold to Duke & Lennon, plaintiffs, is between the defendants, W. H. H. Duke and F. M. Woods on the one side; and the Boston-Kansas City Cattle Loan Company on the other side. Duke and Woods base their title solely on a sale under the proceedings to enforce an agister's lien. The action to enforce this lien was against H. G. Cherry, only. The trial court correctly held that the loan company was not bound by any judgment against Cherry. As only those who are parties to an action, or whose rights have been acquired subsequent to the commencement of the proceedings are bound by them. Freeman on Judgments, 162; 1 Herman on Estoppel (1 Ed.), secs. 20, 145, 146, 147; Clark v. Bettelheim, 144 Mo. 258; Stafford v. Fizer, 82 Mo. 397; Valentine v. Havener, 20 Mo. 133; State v. Shevlin, 23 Mo. App. 598, 603; Manufacturing Co. v. Boyce, 74 Mo. App. 353. (2) It logically followed that the rights of these contending parties must be discussed and settled without regard to the judgment against Cherry. (3) A permanent removal of the property from the place of pasture, and a delivery to Cherry at the Adrain stockyards would cause Duke

& Woods to loose their lien on the forty-five head separated from the whole herd, as to the loan company, whose interest attached after such removal and delivery. State to use, etc., v. Shelvin, 23 Mo. App. 598; 19 Am. and Eng. Ency. of Law (2 Ed.), p. 28, and authorities cited. Smith v. Greenup, 60 Mich. 61. (4) The agreement made by Woods and consented to by Duke, his partner, that Woods was to take the cattle and feed them, and return same to Cherry at a certain price which ignored the pasture bill and was inconsistent with it, would prevent Duke and Woods from claiming or enforcing a lien for pasturage as against the Loan Company, 13 Am. and Eng. Ency. Law (1 Ed.), p. 626; Smith v. Greenup, 60 Mich. 61; Randall v. Brown, 2 How. (U. S.) 400; Nelson v. Roup, 8 Iowa 207; 19 Am. and Eng. Ency. Law (2 Ed.), p. 28, and numerous cases cited; Pickett v. Bullock, 52 N. H. 354; Jacobs v. Knapp, 50 N. H. 71; Wiles Laundering Co. v. Hahlo, 105 N. Y. 234; Wiles Laundering Co. v. Hahlo, 59 Am. Rep. 497. (5) The only possible effect of the lien proceedings before the justice of the peace was to establish the lien for pasturage against the equity of redemption of H. G. Cherry and under the sale to enforce the lien, the purchasers, Duke & Woods, acquired only this equity of redemption, if anything. Crandall v. Cooper, 62 Mo. 478; Mo. F. C. Works v. Ellison, 30 Mo. App. 75. (6) Again it will be remembered that Duke & Woods were only purchasers at an execution sale. What did they get at such purchase? "With unvarying unanimity the rule has been sustained that a sale of chattels under a writ against one person, can have no operation upon the title of another person." 2 Freeman on Executions (2 Ed.), secs. 335 and 336. (7) It follows that if the loan company had a valid mortgage on the cattle when the plaintiffs bought them, then the company has an interest in the funds in controversy; or, if the chattel mortgage was sufficient to charge the property (or the funds arising from its sale) with a lien for the debt it

was intended to secure, then the loan company has an interest in the funds.

*Smith & Denton* for respondents.

(1) The evidence in the case showed that at that time of the execution of the chattel mortgage, the mortgagor, Cherry, was not residing in Bates county, Missouri, but in Jackson county, Missouri. The chattel mortgage, therefore, having been recorded only in Bates county, Missouri, was void as to the respondents in this case. R. S. 1899, sec. 3404; Bank v. Powers, 134 Mo. 432; Martin-Perrin Mer. Co. v. Perkins, 63 Mo. App. 310; Savings Bank v. Holman, 63 Mo. App. 492.
(2) The appellant undertook to show that, at the time of the execution of the mortgage, the domicile of the mortgagor, Cherry, was in Bates county, although he was then residing at Kansas City. There is an essential difference or distinction between the word "resides" as used in the section of the statute requiring chattel mortgages to be recorded in order to make them valid, and the place of "domicile." A man may reside in one place and his domicile at the same time be in another. Anderson's Law Dictionary, p. 375, title "Domicile"; Anderson's Law Dictionary, p. 892, title "Reside"; Walker v. Walker, 1 Mo. App. 413; Shirk v. Shirk, 75 Mo. App. 583.
(3) The record and proceedings brought by respondents to enforce their lien against the cattle in suit constituted a link in the chain of respondent's title to the cattle and were competent evidence in this case. 2 Greenleaf's Ev., secs. 538-539; Black on Judgments, sec. 607; Jones v. Talbot, 9 Mo. 121; Walsh v. Agnew, 12 Mo. 520. (4) The law under which respondents proceeded against the cattle belonging to Cherry to enforce their lien for their feed and pasture bills, gives original jurisdiction to no other court but that of a justice of the peace. These officers "are solely creatures of the statute." R. S. 1899, sec. 4229; Enlow v. Newland, 22 Mo. App. 581;

Sutherland on Statutory Construction, sec. 458; Stone v. Kelley, 59 Mo. App. 218; Charley v. Kelley, 120 Mo. 141.

SMITH, P. J.—The plaintiffs, partners engaged in the live stock commission business in Kansas City under the name of Duke, Lennon & Co., filed a petition in the nature of a bill of interpleader, in the circuit court, alleging that they, in their quality of live stock commission merchants, had sold for the defendant Cherry thirty-three head of steers for which they had received as the net proceeds of such sale $1,850.85; that the defendants Duke and Woods claimed to be the absolute owners of said cattle; that the defendant loan company claimed the proceeds of said sale under a certain chattel mortgage, executed by the defendant Cherry to them and recorded in the recorder's office of Bates county in this State; that the defendant Cherry claimed some interest in said proceeds, which they (plaintiffs) brought into court.

The prayer was that the defendants be required to appear and set up their respective claims, if any, to said proceeds, etc. The defendants, it appears, were duly served with process and appeared to the action.

The defendant loan company filed what is termed a separate answer to the interplea, setting forth that in October, 1899, the defendant Cherry was the owner of said cattle, and while so being, executed a mortgage to the Globe Live Stock Commission Company on said cattle to secure the payment of a certain negotiable promissory note for $1,762.62, which mortgage was recorded in the office of the recorder of deeds of Bates county, and which was a first lien on said cattle; that said note, before the maturity thereof, had been assigned for value to said defendant loan company, who was the owner and holder thereof. This answer of the defendant loan company further alleged that in October, 1899, the defendant Cherry made a contract with defendant Woods to keep and feed said cattle, and placed the same in his possession for that pur-

pose; that under said contract said Woods was to feed said cattle for a specified time, at the expiration of which they were to be returned to defendant Cherry, who was to pay said Woods a specified compensation for such feeding; that Woods had, before the expiration of the time which said cattle under the contract were to be fed, shipped them to Kansas City where he caused them to be sold by plaintiffs and thereby destroyed the security of the defendant loan company. The answer of the defendant loan company further alleged that the Globe Live Stock Commission Co., at the time of the execution of said mortgage, had no notice or knowledge of the said contract between the defendants Woods and Cherry for feeding said cattle. It was further therein alleged that the plaintiffs and defendant Woods had wrongfully converted said cattle to their own use. Judgment was demanded by defendant loan company against the plaintiffs and the defendants Woods and Duke for the value of the cattle, and that the proceeds of the sale of said cattle be applied in payment of the judgment. The defendants Woods and Duke filed a "reply and denial" of the "answer" of the said loan company which was to the effect, (1) that defendant Cherry in 1899 was the owner of said cattle subject to a lien for agistment and feed furnished to such cattle, with others, by defendants Duke and Woods, and that at the time the said cattle were turned over to the defendant Woods by defendant Cherry under said contract, that it was agreed between the defendants Woods, Cherry and Duke that he (Woods) should hold said cattle for the payment of the amount due defendants Duke and Woods for feed and pasture; (2) that in December, 1899, the defendants Duke and Woods brought an action before a justice of the peace, in the township and county where the cattle were situate, against the defendant Cherry, to recover the amount of their agister's lien and for the enforcement thereof against said cattle; that in that action they had judgment upon which an execution was duly issued and levied upon said cattle by a constable and a

sale thereof made, at which defendants Duke and Woods became the purchasers and owners thereof; (3) there was a general denial of the allegations of the separate answer of the loan company; and (4) a prayer that they be adjudged the lawful owners of the proceeds of said sale, etc. The allegations thus made in the "reply and denial" of the defendants Duke and Woods, were not controverted by any pleading, whatever.

It appears from the record that the claim of the loan company against the plaintiffs, for damages for the alleged wrongful conversion, was abandoned at the trial.

It is very well settled that an interpleading suit, like that brought by the plaintiffs in this case, involves two successive litigations; one between the plaintiffs in the bill and the defendants, upon the question whether or not the defendants shall interplead; the other between the different defendants, i. e., the interpleading itself. The subjects of these two litigations are wholly *separate and distinct,* and, therefore, require separate and distinct allegations and proofs. In such case the only decree that plaintiffs can have is that the defendants do interplead. When this is obtained, the plaintiff is altogether out of the suit, leaving the interpleading defendants alone to contest their conflicting claims. After the withdrawal of the plaintiff from the case, the controversy is then solely and exclusively carried on between the interpleaders claiming the fund. When the finding and decree determining the rights of the various contestants are entered, that puts an end to the whole controversy. Glasner v. Weisberg, 43 Mo. App. 214; State v. Kumpff, 62 Mo. App. 332; Arn v. Arn, 81 Mo. App. 133; Price v. Mining Co., 83 Mo. App. 470. When the defendants were brought before the court and did not, by an appropriate pleading, put in issue the substantive allegations of the petition, the plaintiffs were entitled to an order requiring the defendants to interplead. The case was then at an end so far as the plaintiffs were concerned.

The defendants then were at liberty to file in the inter-

pleading case their respective petitions or bills interpleading for the fund. This was done, though somewhat informally. Each by his pleading stated the facts constituting his or its claim to the fund. Their interests were adverse one to the other. Appropriate pleadings should have been filed to make an issue on each of the claims stated by them. Each should have, by answer, pleaded his defense to the petition or interpleading bill of the other. In this way intelligent issues could have been made for the determination of the court.

In the present case the loan company filed a petition or interpleading bill setting forth the facts constituting its claim to the fund. Woods and Duke also filed a like pleading in which they set forth the facts which constituted their claim to the fund, but they went further and by a general denial put in issue the allegations of the petition or interpleading bill of the loan company. While this, according to what has just been stated, was perhaps irregular, it accomplished the double purpose of stating their claim and controverting that set up by the loan company. But the loan company did not, by any pleading, put in issue the allegations of fact made by Woods and Duke, in respect to their claim to the fund. These allegations not being controverted by any pleading of the loan company, must be taken for the purposes of deciding this controversy as admitted. Sec. 628, R. S. 1899. The case being one of purely equitable cognizance, it is for trial here *de novo,* and in determining it upon the pleadings and evidence, we must take it as standing admitted that the defendants Woods and Duke were entitled to an agister's lien against said cattle antedating the execution of the mortgage under which the said loan company claims the fund, and that they became the purchaser of said cattle at a sale thereof made under final process issued on a judgment given in an appropriate and valid judicial proceeding enforcing the lien.

The defendants Woods and Duke by their purchase of the cattle were brought into such relations to the mortgagor Cherry

as to entitle them to invoke the aid of section 3404, Revised Statutes 1899, which declares that no mortgage or deed of trust of personal property shall be valid against any other person than the parties thereto, unless acknowledged or proved and recorded in the county in which the mortgagor or grantor resides. Johnson v. Jeffries, 30 Mo. 423; Bank v. Bank, 50 Mo. App. 93; Drew v. Drum, 44 Mo. App. 25. The undisputed evidence shows that at the time of the execution of the mortgage in question, and for nearly a year preceding that time, Cherry, the mortgagor, had resided in Kansas City, Jackson county. The mortgaged cattle were located in Bates county and the mortgage was recorded in that county and not in Jackson county, the county of the residence of the mortgagor. The cases in this State hold that a mortgage so recorded is void under the statute as to third persons sustaining the relation to the mortgagor that the defendants do. Martin v. Perkins, 63 Mo. App. 310; Bank v. Holman, 63 Mo. App. 492; State v. Sitlington, 51 Mo. App. loc. cit. 259, and cases there cited.

And there are no facts in this case tending to show that Woods and Duke purchased the cattle in recognition of the mortgage of the loan company, so that in the application of the statute, it is controlled as in Mead v. Maberry, 62 Mo. App. 557. And it seems to us that for these reasons, and without reference to whether or not the description of the property contained in the mortgage was valid, or whether or not the mortgage was executed prior or subsequent to the inception of the agister's lien enforced by the judgment under which Woods and Duke acquired title, the mortgage is invalid as to Woods and Duke.

We are unable to discover anything in the pleadings and evidence to warrant a conclusion different from that reached by the trial judge whose decree will be affirmed.    All concur.

Duke, Lennon & Co. v. Duke & Woods.

ADDITIONAL OPINION.

The loan company brought an action of replevin against F. M. Woods, one of the defendants in the interpleader suit, to recover the possession of the eleven remaining head of the forty-five steers placed in the latter's possession by Cherry to be fed. The answer was a general denial. By stipulation this case was tried by the court in connection with the interpleading cases, and the evidence in the latter was, as far as relevant, to be considered in the decision of the former. The defendant had judgment in this case and the plaintiff appealed.

The court, by an instruction requested by plaintiffs, declared that the proceedings by Woods and Duke to enforce a lien for feeding the cattle in controversy, was not binding on the plaintiff. The propriety of the action of the court in giving this instruction is not questioned by the plaintiff's appeal.

The evidence discloses that at the time of the commencement of this action there was due the defendants a considerable sum of money for the feeding of the cattle in controversy for the preceding seven months. The cattle had been placed by Cherry in the possession of defendants prior to the date of the mortgage to be fed. The defendant, under the statute, was entitled to a lien on the cattle for his feed bill. Neither Cherry, the mortgagor, nor the plaintiff, tendered the defendant the amount of the feed bill claimed, or any amount whatever, before the commencement of this action. The defendant having thus acquired a lien on the cattle, he was in a position to call in question the alleged superior mortgage lien of the plaintiffs. And as that lien, for the reasons stated in the previous opinion relating to the interpleading case, must be held void as against the defendant, we need not notice the plaintiff's refused instructions further than to say that under the evidence the court could have reached no other result than it did, and that, therefore, its action in refusing said instructions was not prejudicial.

The judgment will accordingly be affirmed. All concur.