J. L. PHELPS, Respondent, v. W. C. MANECKE et al., Appellants.

Kansas City Court of Appeals, June 18, 1906.

1. **FRAUD: Remedy: Fraud Feasors.** If the law catches two in an illegal transaction it will frequently punish both but it never lends the assistance of the courts to one to enforce the other's promise.

2. **MAINTENANCE: Enforcement of Contract: Public Policy: Consideration.** Where one undertakes another's cause, employing lawyers and getting up evidence at his own expense, he is guilty of maintenance and a note given to secure his abandonment of such engagement is without consideration since the transaction is against public policy.

Appeal from Osage Circuit Court.— *Hon. R. Steel Ryors,* Judge.

REVERSED.

*W. S. Pope, W. L. Vaughan* and *W. L. Pinnell* for appellants.

(1) There was no lawful consideration for the note. The evidence established the contrary beyond dispute. 6 Am. and Eng. Ency. Law, p. 757; Thornton v. Smith, 7 Mo. 85; Summer v. Summers, 54 Mo. 340; Baker v. Farris, 61 Mo. 389; Parsons v. Randolph, 21 Mo. App.

353; Beck v. Seal, 45 Mo. App. 475; Beland v. A. B. B. A., 157 Mo. 593; Covington v. Threadgill, 88 N. C. 186; Schroder v. Nielson, 39 Neb. 335; Allen v. Pearce, 84 Ga. 606; Tolhurst v. Powers, 133 N. Y. 460; Weatherby v. Choate, 21 Tex. 272; Shuder v. Newby, 85 Tenn. 348; Bates v. Sandy, 27 Ill App. 552.    (2)    If plaintiff had accepted the proposition he says Weller made to him, it would have been an unlawful and champertous contract. Such being the case, it would be unlawful for plaintiff to exact money from defendants for not accepting such offer.    Duke v. Harper, 66 Mo. 51; Gilbert v. Holmes, 64 Ill. 548; McGoon v. Ankeny, 11 Ill. 558; 5 Am. and Eng. Ency. Law, pp. 815, 822; 1 Current Law, p. 626, et seq.; 1 Current Law, p. 639 et seq.; 3 Current Law, pp. 809, 810.    (3)    "Unlicensed attorneys cannot recover for services." Hittson v. Browne, 3 Col. 304; Bachman v. O'Reilly, 14 Col. 433; Tedrick v. Hiner, 61 Ill. 189; Perkins v. McDuffee, 63 Me. 181; 3 Am. and Eng. Ency. Law, pp. 415, 416.    (4)    The real test in the case is, "Could plaintiff have enforced his contract with defendant had no note been given?"    If he could not, then he cannot enforce payment of the note.    Haynds v. Hayes, 25 Ind. 31; Valentine v. Stewart, 15 Cal. 387; Hennesy v. Hill, 52 Ill. 281; Long v. Long, 42 Mo. 550; 6 Am. and Eng. Ency. Law, p. 742.    (5)    If any part of the consideration of an agreement be void, as against public policy, the whole contract fails. Valentine v. Stewart, 15 Cal. 387.

*J. W. Vosholl* and *Monroe & Zevely* for respondent.

(1)    An action on a note, the consideration of which is to refrain from doing a legal act, can be maintained. Hemper v. Schneider, 17 Mo. 258; Lindell v. Rakes, 60 Mo. 249.    The same doctrine has been upheld in other jurisdictions. Hammer v. Sidway, 124 N. Y. 538, in which case the court says in substance, that it

is sufficient that one party restricted his lawful freedom of action upon the faith of another's promise. Talbot v. Stemmons, 89 Ky. 222. (2) The waiver of a legal right on the part of a promisee is a sufficient consideration for a promise made on account of such waiver. Vogel v. Meyer, 23 Mo. App. 427; German v. Gilbert, 83 Mo. App. 411; Chenoweth v. Express Co., 93 Mo. App. 185. The forbearance of any legal right may be a consideration. Page on Contracts, p. 426. (3) Wherein would Phelps' acceptance of Weller's offer have been illegal, immoral, champertous or against public policy? "The best evidence of a public policy·as to a contract or matter not involving moral turpitude is the action or non-action of the public through its law-making representatives," says the court of appeals, in Bell v. Mullholland, 90 Mo. App. 612, and the laws of this State nowhere denounce the acceptance of a proposition, such as Weller made to Phelps, under the circumstances surrounding the same, as illegal or immoral, or against public policy. Ordelhiede v. Railroad, 80 Mo. App. 357: Crow v. Herman, 25 Mo. 417; Brown v. Binge, 21 Ore. 260; 28 Am. St. Rep. 752; Clothing Co. v. Sharpe, 83 Mo. App. 392; Lawson on Contracts (2 Ed.), sec. 315; McCall v. Capehart, 20 Ala. 521; Brown v. Bigne, 28 Pac. 11, 21 Ore. 260; Duke v. Harper, 2 Mo. App. 10, 66 Mo. 51; Ennan v. Rieger, 105 Mo. 659; Dunnigan v. Green, 165 Mo. 98; Kansas City v. Maroden, 93 Mo. App. 143; Land Co. v. Zeither, 182 Mo. 251.

ELLISON, J.—Defendant gave to plaintiff his promissory note for three hundred and twenty-five dollars and upon refusal to pay it plaintiff brought the present action and recovered judgment in the trial court.

It is rather a remarkable case. It appears that defendant owned a saloon in the town of Belle, Maries county, and one Jake Weller, owned a farm in that county. They made a trade or exchange of the saloon for the farm. It seems preparatory to the trade defend-

ant liberally mixed water with his stock of whiskey and. for that, and other reasons, Weller, as the lawyers say, wanted to rescind; but he himself expressed his desire rather more forcefully on the witness stand, by testifying that being drunk when he made the exchange he wanted to "rue back on the trade." It became known in the town of Belle that Weller was dissatisfied with his bargain and wanted it undone. He spoke of his desire to this plaintiff, who, though not a lawyer, readily entered into an arrangement whereby, for one thousand dollars remuneration, he would establish the *status quo* between the parties; or, as he more intelligibly explained to Weller, he would put him back on his farm and defendant back in his saloon.

It appears that this arrangement to "break up the trade" came to defendant's ears and he became alarmed for the safety of his profit in having traded water for land. It does not appear clearly just how plaintiff and defendant came together, nor is it clear that plaintiff took part in having the story of his engagement with Weller to interfere with plaintiff's affairs, come to the knowledge of the latter. At any rate plaintiff was not at all averse to the story reaching defendant, and, apparently, he did not sympathize with defendant's alarm, for he added thereto somewhat by suggesting that he purposed having him "pulled" by the federal court for adulterating whiskey in violation of the revenue law. Defendant now became nervously solicitous as to plaintiff's getting into the affair and began making offers of money to him to stay out. He first offered twenty-eight dollars and pasture for some horses, which plaintiff rejected as "no inducement at all." Defendant then sent for him and offered him two hundred and fifty dollars, which he rejected, and they separated. Again they met, and defendant offered him six hundred and twenty-five dollars. He took this offer under advisement and con-

Phelps v. Manecke.

sidering that staying with Weller involved "the employ-ment of lawyers" and that he would have to "get up the evidence to break it up," he concluded he "would not make any more out of it (Weller's offer) than he (defend-ant) offered me, so I went back and told him I would take him up at that." But defendant did not have the ready money and plaintiff must have it. So it was fin-ally arranged that defendant would pay three hundred in cash and give his note (the one in suit) with a surety, for three hundred and twenty-five dollars. As just stat-ed, defendant did not have any cash, and, as he states, having before his eyes a violated revenue law and a fed-eral court for which and before which, he was to be "pulled," he gave another party one hundred dollars for assisting him in borrowing the three hundred paid down to plaintiff. This short history of how and why plain-tiff abandoned Weller and took up with the other side is taken from plaintiff's own testimony ex-cept where otherwise indicated. Plaintiff denies, however, that he made the suggestive and pur-suasive intimations about the revenue law and the federal court. And as we intend to lay our hand on the plaintiff, or rather, take the trial court's hand off of the defendant, we will pass that by and only consider the case as made by the evidence in plaintiff's behalf.

The idea urged by plaintiff in support of the judg-ment is that there was a valid legal consideration sup-porting the note in his giving up his bargain to serve Weller for a thousand dollars. It is, however, a matter for serious consideration whether in the conduct of plaintiff and defendant in bringing about the abandon-ment of Weller (if the proposed service was legal) was not of sufficient turpitude to condemn the plaintiff. If the law catches two in an evil transaction, it will fre-quently punish both, but it never lends the assistance of the courts to one of these to enforce the other's promise. Not that the law favors the promisee more, or the promisor less, but it is so utterly indifferent between the

two as to refuse to move its machinery at the request of either. But we pass by that suggestion to take up one made by defendant's counsel upon which we base our judgment.

Plaintiff was an outside party wholly without interest in the matters out of which a legal controversy might arise between Weller and defendant and, according to his own statement, he was to take up Weller's cause, employ lawyers and get up evidence at his own expense. His engagement, the abandonment of which he relies upon for consideration to support the note, was clearly and plainly what the law calls maintenance, and was therefore unlawful. [Duke v. Harper, 66 Mo. 51; Gilbert v. Holmes, 64 Ill. 548; McGoon v. Ankeny, 11 Ill. 558, 560.] We considered such questions in a recent case in this court, pronouncing acts of maintenance to be unlawful in this State. [Breeden v. Ins. Co., 110 Mo. App. 312.] The abandonment of an unlawful enterprise though it would have been profitable, is not a valid consideration. It is against public policy to permit one to demand a price for abstaining from an unlawful project or an evil deed. In such case there can be no consideration; for the wrongdoer has not lost anything which he had any right to gain.

The demurrer offered by defendant's counsel should have been sustained. The judgment will therefore be reversed. The other judges concur.