JOHN D. TAYLOR, Respondent, v. HARVEY W. PERKINS, Interpleader, and C. W. PRINCE, Interpleader, Appellant.

Kansas City Court of Appeals, April 7, 1913.

1. **INTERPLEADER: Equity: Law.** Where a bill of interpleader is filed asking that opposing claimants interplead for a certain fund, the proceeding is in equity and should not be tried as a case at law.

2. **EQUITY: Advice of Jury.** Though a proceeding is in equity, the trial court may take the advice of a jury, not being bound thereby.

3. ——: ——: **Attorney's Fee: Lien: Discharge.** In a proceeding to enforce a lien for an attorney's fee, if it be shown that the attorney was rightfully discharged for failure to serve his client faithfully, he cannot enforce a lien for a fee.

4. ——: ——: ——: **Champerty: Consideration.** If an attorney agrees to pay the costs of a case as a part of the consideration for employing him, it is champertous and void and no lien for a fee can be enforced.

5. ——: ——: ——: **Attorney's Lien: Common Law.** The statute of Missouri giving an attorney a lien for a contingent fee consisting of a part of the judgment to be recovered, does not repeal the common law of champerty and maintenance.

6. ——: ——: ——: **Interest in Litigation: Contract: Consideration.** A person who has an interest in the subject of litigation may lawfully contract to aid in carrying it on, without being guilty of maintenance, provided such interest has been acquired independently of the contract and is not acquired in consideration of the aid to be rendered.

7. ——: ——: **Champerty and Maintenance: Distinction: Gain.** There is a distinction between champerty and maintenance. It is not maintenance for relatives, or friends in charity, to aid one in litigation. But if they render the aid for gain of a part of the matter litigated, it becomes champerty and is forbidden by law.

8. ——: ——: ——: **Contract: Writing: Consideration.** Though a contract is in writing and complete on its face, yet it is proper to receive oral evidence showing the consideration was unlawful.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb,* Judge.

REVERSED AND REMANDED.

*Roy McKittrick, C. W. Prince* and *T. A. Witten* for appellant.

The court erred in refusing to sustain defendant Prince's demurrer to the original bill of interpleader. The bill itself sets up all the facts necessary to establish said defendant's lien against the fund in the interpleader's hands, and the court should have sustained the demurrer and ordered the fund paid to defendant Prince. R. S. 1909, sec. 964-65; United Railways Co. v. O'Connor, 153 Mo. App. 128; Wait v. Railroad, 204 Mo. 491; Taylor v. Transit Co., 198 Mo. 715. After the court improperly submitted the case to the jury, it might have brought about the correct result by directing the jury to find the verdict for the plaintiff.

*L. N. Dempsey* and *J. A. Collet* for respondent.

(1) The trial court had the right to submit the facts in issue to a jury and could either adopt the finding of the jury and pronounce judgment thereon or disregard the finding of the jury as it saw fit. Weeks v. Senden, 54 Mo. 129; Borchers v. Barckers, 158 Mo. App. 267. (2) There were no declarations of law asked or given, hence the judgment will be affirmed, if it can be done upon any theory applicable to the facts of the case: Gintry v. Templeton, 47 Mo. App. 55. (3) A contract founded upon champertous consideration is against public policy and void. Interpleader Prince seeks to recover on a champertous contract. In such case, claimant can have no relief: Bent v. Priest, 86 Mo. 490; Duke v. Harper, 66 Mo. 59; Comstock v. Flowers, 109 Mo. App. 275; Barmgrover v. Pettigren, 2 L. R. A. (N. S.) 260; Re Snyder, 14 L. R. A. (N. S.) 1101.

ELLISON, J.—A bill of interpleader was filed by plaintiff Taylor setting forth that he held in his hands the sum of $980, which was claimed by C. W. Prince, an attorney at law, as a fee, and by Harvey W. Perkins as administrator of the estate of James R. G. Perkins. Taylor asked that these parties be required to interplead for the money. The trial court made the order and the parties filed their claims accordingly. The court, over the protest of Prince, then proceeded to try the case with a jury as an ordinary action at law. A verdict was rendered for Perkins and judgment entered accordingly. Whereupon, after an unsuccessful motion for new trial, Prince appealed.

It was error to treat the case as an action at law. It should have been tried as a case in equity. [Grand Lodge v. Elsner, 26 Mo. App. 108; Funk v. Avery, 84 Mo. App. 490; Duke, Lennon & Co. v. Duke, 93 Mo. App. 244, 251; Smelting Co. v. Lead Works, 102 Mo. App. 158, 164; Borchers v. Barckers, 158 Mo. App. 267.]

It is quite true that a trial court in an equity case may frame issues and submit them to a jury, rather for the advice of the latter, the court not being bound by the verdict. But this record does not disclose that procedure was adopted, or that the case was other than a trial at law where the verdict if sustained by any substantial evidence is binding on the court.

It seems that James R. G. Perkins was a brother of Harvey Perkins, the administrator, and that James was negligently killed by the servants of the Chicago, Burlington & Quincy Railway Company, and that an action for damages was instituted in the State court by Harvey as administrator against the railway company, Prince being his attorney. The cause was removed to the Federal court and then dismissed and brought again in the State court and again removed. At this point Prince was discharged and other attor-

neys employed, who again dismissed and again brought in the State court where it proceeded to judgment for six thousand dollars. This was compromised for twenty-eight hundred dollars. Prince had a contract for a fee of thirty-five per cent of what should be obtained from the railway company, amounting under the compromise to nine hundred and eighty dollars, for which he claims to have an attorney's lien.

There was evidence tending to show that Prince was rightfully dismissed for failure to faithfully perform his duty to his client. And there was evidence tending also to show that he was guilty of champerty in that he agreed to prosecute the suit at his own expense, paying the costs thereof. If, on retrial, the evidence shows these matters to be true, he would not be entitled to his fees, nor, of course, to enforce a lien therefor. [Bent v. Priest, 86 Mo. 475, 490; Duke v. Harper, 66 Mo. 51; Kelerher v. Henderson, 203 Mo. 498, 515; Breeden v. Ins. Co., 110 Mo. App. 312; Phelps v. Manecke, 119 Mo. App. 139.]

But Prince insists that his contract was in writing and that no mention of an agreement to pay the costs is made in the writing and as the law is that a written contract plain on its face cannot be altered or added to, no oral evidence can be heard on the subject of maintenance. That is not the law. If it were it would permit a recovery on a promissory note given as compensation for the commission of a felony. The maintenance here alleged is a part of the consideration of the contract of employment, and as such may be shown.

But it is insisted that since the law permits an attorney to become interested in an action by authorizing him to maintain a lien for a contingent fee out of the proceeds of the suit, he is rightfully and legally interested in the action and may properly agree to pay the costs. This is put upon the ground that one who is interested in the subject-matter of litigation may contribute towards its prosecution. But this in

terest must have existed or been acquired in some way other than through the contract containing the champertous agreement. In Gilman v. Jones, 87 Ala. 691, quoting from 3 Am. & Eng. Ency. of Law, 76, it is said, "but it is essential that it (the interest) be distinct from what he may acquire from the party maintained." In Ware's Adm'r v. Russell, 70 Ala. 174, 179, it is said that: "The corrupting element of the contract is its tendency to foment or protract litigation, its dependency for its value upon the termination of suits, and its introduction to control and manage them, of parties *without other right or interest than such as is derived from the contract.*" (Italics ours.) In 2 Story's Eq. Jur., sec. 1050, it is said that one "may purchase by assignment the whole interest of another in a contract, or security, or other property which is in litigation, provided there be nothing in the contract which savors of maintenance; that is, provided he does not undertake to pay any costs, or make any advances beyond the mere support of the exclusive interest which he has so acquired."

It would be unsound, morally and legally, to say that one may by a champertous agreement acquire an interest in litigation which interest instantly legalizes the agreement.

We are cited to a case in Michigan (Wildey v. Crane, 63 Mich. 720) where a man owned a horse which he insured against loss by fire. The horse was burned in such way as that the insurance company was not liable under the policy, as was afterwards decided. The owner considered his claim doubtful, and having been advised that the company was not liable, had abandoned all idea of attempting to recover anything. A lawyer then approached him and proposed that if he would permit him to bring a suit and it failed it should not cost him anything and that he (the lawyer) would pay all costs incurred; but if successful he should have one-half the sum recovered. The owner agreed, the

action was brought and lost, the costs being assessed against the owner, which he was compelled to pay. He thereupon brought an action against the lawyer on his agreement, and champerty was set up by the latter in avoidance. It was held that the agreement was valid and the owner recovered. But the court held the agreement undoubtedly to be champertous under the common law and only sustained the action on the ground that the statutes of Michigan had repealed the law of champerty. And in Maine (Low v. Hutchinson, 37 Me. 196) where the common law is not repealed by statute, such an agreement was held to be void.

The Michigan statute thus held to repeal the common law of champerty, reads as follows: ''That all existing laws, rules, and provisions of law restricting or controlling the right of a party to agree with an attorney, solicitor, or counsel for his compensation are repealed, and hereafter the measure of such compensation shall be left to the agreement, express or implied, of the parties.''

We have no such statute in this State. On the contrary, our attorneys' lien statute (Sec. 964, R. S. 1909) declares that: ''The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, *which is not restrained by law.* . . .'' A champertous agreement *is* restrained by law in this State (authorities infra) and therefore that section of the attorneys' lien statute does not legalize an agreement void at common law.

But it is said that the statute (sec. 965) allows an attorney ''to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action;'' and that this implies a right to make a valid agreement to pay the costs. That implication does not arise on the statute. For, the statute being so particular in its terms and omitting to authorize such an agreement, unlawful

without the statute's aid, leaves the inference that it was not intended. The right to contract for a contingent fee, or a certain portion of the sum recovered, is a legal right without the statute and was repeatedly recognized before its enactment. It is only when the contract includes prosecuting the case at the attorney's expense, such for instance, as payment of costs, that the illegality appears: Crow v. Harmon, 25 Mo. 417; Duke v. Harper, 66 Mo. 51, 60, and next to closing paragraph page 61. See also statement of the case, page 51. Though that is not necessary to its illegality in some States. [Ackert v. Barker, 131 Mass. 436.] The cases of Taylor v. Transit Co., 198 Mo. 715, 731— Kelerher v. Henderson, 203 Mo. 498, 513-515—and Shelton v. Franklin, 224 Mo. 342, 355, clearly show that if the contracts there referred to had included payment of costs, they would have been void for champerty.

That the circumstance that an attorney is now entitled to a lien by reason of the statute, does not affect the question of a champertous agreement, is further made manifest by the suggestion that in many jurisdictions an attorney's lien was recognized as a common law right, yet an agreement to carry on the action and pay the costs was regarded by the same courts as champertous and unlawful.

We do not understand why defendant should cite us to Breeden v. Insurance Co., 220 Mo. 327, 424. That case was decided by this court (110 Mo. App. 312) and on re-trial was appealed to the Supreme Court. In each of the opinions, in both courts, the law of champerty is fully recognized. The fact that the Supreme Court referred to the old common law breadth of the law of champerty being now lessened, and to the fact that the attorney's lien act has limited some phases of maintenance, is by no means an intimation that champerty in its worst and most distinct form, viz.,

the payment of costs, as a part of the contract to share the judgment, was no longer unlawful. It is as much the policy of the law now to discourage the stirring up of strife and bad blood by holding out the inducement of freedom from costs in the event of failure, as it ever was.

Judge Walker, in Morton v. Forsee, 155 S. W. 765, refers to the lawyers' lien statute and states, in effect, as in the Breeden case, that that act had "in regard to some phases of maintenance" modified the common law. Thus, in England and many of the States it was champerty if lawyer and client agreed that the former's fee should consist of a share of the recovery, though not connected with an agreement to pay costs. That, as seen above, was not the law in this State, though some punctilious lawyers questioned the propriety of such contracts. As the books term it, the old law of champerty was too extreme in some of its phases. Thus, in Wallis v. Portland, 3 Ves. 494, 501, it is suggested whether the old law did not make it maintenance in the pleader "to state a case with more advantage than belongs to it." And in Pierson v Hughes, 1 Freem. 71, it was said, as *amicus curiae*, "that it had been adjudged maintenance for a man to speak to a counsel or an attorney to encourage the suit wherein he had no interest;" and this extreme statement is referred to in Wallis v. Portland, supra, 503. So it is said in Morton v. Forsee that the attorneys' lien statute was enacted "to place them (attorney and client) upon the same footing as other persons having business relations with each other, but in no way affecting the rule applicable when a fiduciary relation is shown to exist," which, of course, would not make a champertous agreement valid. We do not see how these references by the Supreme Court to the attorneys' lien statute can be thought to have any bearing on the question in this case.

As has already been said, an attorney in this State could, before the statute, contract for a contingent fee consisting of a part of the recovery. The statute now, in addition, confers the right to a lien to enforce such agreement.

In the cases which have been decided by the Supreme Court, and in this court, it has been stated and conceded that relations may aid one another, that the prosperous may, in charity, aid his poor and unfortunate friend, without incurring guilt of maintenance. But where sordid gain is the contractual motive, the ties of blood and of charity and friendship are succeeded by selfishness, and what would have been humane maintenance becomes unlawful champerty. In this respect there is a difference between champerty and maintenance. Relationship, friendship, charity, may excuse maintenance, but not champerty. In Hutley, L. R., 8 Q. B. 112, BLACKBURN, J., said that plaintiff's counsel had "produced no authority that blood relationship between the parties made any difference as to champerty." And LUSH, J., said, "I am of the same opinion. It is conceded by the plaintiff's counsel that if it were not for the plaintiff's interest the contract in the declaration would amount to champerty. First, the plaintiff is a cousin of the deceased; that would give him no interest. Nor would the relationship to the defendant justify an agreement of champerty. . . . There are cases which show that there are circumstances which may justify a person in maintaining, that is, in assisting, one of the litigant parties in a suit; certain relationship would justify maintenance; but I know of no case, and Mr. Day has not produced the semblance of an authority for saying that relationship or collateral interest justifies champerty."

The right of an attorney to aid and assist his client by making advances for him, expecting to be reim-

bursed by the client, is proper enough, and should not be confounded with the evil of champerty and maintenance.

The judgment will be reversed and the cause remanded. All concur.