## JOHN D. TAYLOR, Respondent, v. HARVEY W. PERKINS, C. W. PRINCE, Interpleader, Appellant.

### Kansas City Court of Appeals, November 2, 1914.

1. **CHAMPERTY: Evidence.** Evidence examined on question whether an attorney was guilty of champerty in agreeing to pay the costs in an action for damages, but no decision made.

2. **ATTORNEY'S LIEN: Abandonment of Case.** An attorney had a contract with his client for a share of the proceeds of a judgment or compromise to be obtained from a railway company for negligence. The case was brought by such attorney in a State court and was removed to the Federal where it was dismissed and rebrought in a State court and again removed to the Federal court. The plaintiff then directed the attorney to dismiss it so as to bring it in a State court at a point where the Federal court did not have jurisdiction. The attorney failed to do so when the plaintiff himself dismissed it and had a new suit instituted where it was not interfered with by the Federal court and where judgment was obtained, and afterwards compromised. After the attorney failed to dismiss the

case he abandoned it and took no further part in it. It was *held* that he was not entitled to a lien for the share of the proceeds under his contract.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb*, Judge.

AFFIRMED.

*C. W. Prince. pro se. Roy McKittrick* and *T. A. Witten* for appellant.

*L. N. Dempsey* and *J. A. Collet* for respondent.

ELLISON, P. J.—Interpleader, an attorney at law, had a written contract with defendant, as administrator of his brother's estate, whereby he was to prosecute an action for damages against a certain railway company for the death of his brother. By that contract he was to receive thirty-five per cent of whatever sum was received whether by judgment or compromise. The case was thrown back and forth between the Federal and State courts in Jackson county. At the time it was last in the Federal court defendant directed plaintiff to dismiss it and he failed to do so. Whereupon defendant himself dismissed it and a new action was brought in the State court in Chariton county by other attorneys which resulted in a judgment for $6000 damages. Defendant and the railway company compromised this judgment for $2800.

The railway company had been notified of plaintiff's contract for thirty-five per cent and desired protection from any lien claim he might make. It was finally agreed that $980 should be deposited with plaintiff, and he would institute proceedings requiring Prince and Perkins to interplead. They did so and, after a trial by jury, a judgment was rendered against Prince's claim. This was appealed to this court where

the judgment was reversed and the cause remanded, on the ground that it was a case in equity which should be tried by the court without a jury. The case is reported in 171 Mo. App. 246, where will be found a full history of the case and the contentions and theories of the respective parties. By reference to that report it will be seen that questions to be determined on a retrial were whether Prince had a contract, void for champerty, and whether he had performed his duty as defendant's lawyer.

At the second trial judgment was again against Prince's claim and he has again appealed. One question to determine is whether as a part of his contract whereby he was to receive the aforementioned per cent he agreed to pay the costs and thereby rendered the agreement void for champerty. Prince testified that he did not make that agreement and Perkins that he did. There are many convincing circumstances that Perkins' memory of the matter is correct. He had been an old acquaintance of Mr. Dempsey, an attorney at law—had known him in Chariton county and in Kansas City after his removal there. On the death of his brother he went to Dempsey and employed him in getting out administration papers and in an endeavor to settle the damages with the railway company for his brother's death. The railway company refused to settle and a suit was necessary. Perkins wanted Dempsey to agree to pay the costs in case of adverse results and he refused. Then Perkins and Prince came together (what caused or led to the selection of Prince need not be considered) and Perkins stated his reason for leaving Dempsey, and he testified that Prince then agreed to pay the costs. Afterwards, Prince and Perkins began to show dissatisfaction with each other, whereupon the latter suggested that he would employ Dempsey to assist and the former consented. Perkins and Dempsey thought the case, then pending in the

Federal court, should be dismissed and brought in the State court in Chariton county where, on account of neither of the parties living there, it seems the Federal court could not lay hands on the case. Prince was finally directed by Perkins to dismiss in the Federal court and he refused, or at least failed to do so, and Perkins, as already stated, personally dismissed it. Perkins then continued the employment of Dempsey and also retained Mr. Collett of the Chariton county bar and the new action brought there escaped disturbance by the Federal court and the judgment was obtained.

It seems strange and unreasonable that Perkins should have left his old acquaintance to whom he immediately went when his legal troubles arose—that he should have set him aside for Prince who was a stranger unless by the consideration that the latter would relieve him of the risk of costs which Dempsey refused to do. Dempsey corroborated Perkins. It is true Dempsey's testimony was objected to and after being given was ruled out, yet we believe it was proper in proof of a strong circumstance, viz, an existing fact why he did not continue his employment and bring the action.

The principal evidence relied upon to sustain Prince's recollection of the contract consists of matters not inconsistent with his having agreed to pay the costs. Such as that Perkins on one or more occasions questioned the length and necessity of some of the depositions, and that he talked with the stenographer, who took them as she testified, as though he owed the bill. It is true he might be liable to the parties entitled to costs, but that does not say that no agreement existed that Prince was to reimburse or relieve him from such liability.

There is another independent reason fatal to Prince's claim which renders it unnecessary to make

decision of the foregoing, and that is, that he abandoned the case. He testified that he was never discharged by Perkins, but that he considered himself discharged when Perkins dismissed the case. But he never offered further assistance or notified Perkins, nor does he claim that he gave the matter further attention. Nor did he pretend to make known any claim. The entire matter seems to have dropped from his consideration until he learned of the fruits acquired by the labor of others when he set up the present claim to a share of the proceeds. He did not perform any service in obtaining the results finally secured.

It is unnecessary to go into questions now, discussed by the parties as to the right of an attorney to disobey the instructions of his client; suffice it to say the greater part of what has been suggested bears upon the right of an attorney to bind his client in the latter's relations and responsibilities to third parties. We are satisfied Prince's claim is unjust for the reason that it is inequitable and unearned. As we have said, he never informed Perkins that he would not follow the case to Chariton county; in fact, he testified that he had not made up his mind whether he would. He never answered the letter Perkins wrote him. He never informed Perkins that he considered himself discharged, nor did Perkins discharge him. On the contrary, he testified that Perkins wanted him to continue in the case. We repeat that the evidence shows the case unquestionably dropped from his consideration until after learning of the judgment he concluded, for the first time since he voluntarily parted company with it, that he had a claim.

In our opinion the judgment in the trial court was manifestly for the right party and it is affirmed. All concur.